**Roy Miller, by William Miller, Appellant, v. Sears, Roebuck & Company of Illinois, Appellee.**

**Gen No. 32,554.**

Opinion

filed November 19, 1928.

RATHJE & CONNOR and CHARLES C. SPENCER, for appellant.

ADLER, LEDERER & KAHN, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff, a minor, bringing suit to recover damages for personal injuries received by him, upon trial suffered an adverse verdict upon a peremptory instruction by the court. From the judgment entered thereon he appeals.

The declaration alleged, in substance, that in August, 1925, defendant was a retail dealer in merchandise in Chicago, Illinois, and sold its merchandise by mail orders; that it wrongfully, carelessly and negligently advertised for sale a certain toy pistol called a "Ronson Repeater" for use by children and wrongfully represented that such toy pistol was harmless and that it complied with the law of every State. Plaintiff avers that said toy pistol was, in fact, dangerous and likely to set fire, when discharged, to inflammable substances, all of which was known to the defendant; that plaintiff's mother, induced by the advertisement, purchased said toy pistol from the defendant for the use of plaintiff; that said toy pistol was delivered in a package in which it was stated to be "absolutely harmless."

Plaintiff further averred that he resided on a farm near Naperville, Illinois, and that certain quantities of gasoline were located on the farm according to an almost universal custom among farmers who kept gasoline for use on such farms; that when the toy pistol was received by plaintiff's mother by mail, plaintiff used it by shooting the same in the manner in which it was intended to be used and that while he was so shooting it the pistol set fire to certain quantities of gasoline on the farm where plaintiff resided, whereby plaintiff was burned and suffered great pain and was rendered a permanent cripple.

Upon the trial it was shown that defendant's catalogue was in the home of plaintiff's parents. The plaintiff at that time was 8 years and 11 months of age. After seeing the defendant's advertisement of the toy pistol plaintiff's mother agreed with plaintiff that he might purchase the toy pistol, and to that end plaintiff gave his mother money he had earned by doing chores on the farm. Plaintiff's mother took the money and gave it to the mail carrier with instructions for him to purchase a money order and forward it to the defendant. Mrs. Miller signed her husband's name, "William C. Miller," to the order; thus the order contained nothing more than the request that defendant ship to William C. Miller a Ronson toy pistol. The pistol was accordingly sent by defendant to William C. Miller and received by plaintiff's mother, who opened the package and took from it the pistol which she later gave to plaintiff. Plaintiff had never used a toy pistol before, and when he received this one he commenced to shoot it promiscuously in the house and also out of doors. His little sisters were with him all the time, and while he was shooting the pistol its flashes did not set fire to anything and did no harm.

In the afternoon he was sent by his mother to the oil house, in which were kept quantities of gasoline and kerosene used in and about the farm, with a 5-gallon

can to draw gasoline from a 50-gallon tank. This oil house was a small wooden house about 7 by 8 feet square. It contained four 50-gallon tanks raised from the floor so the gasoline could be drawn through a faucet into the 5-gallon can. This can had no cover but opened at the top. Plaintiff partially filled the can with gasoline; at the same time he held the toy pistol about five inches from the opening of the spout of the 5-gallon can and shot off the pistol. He shot three or four times while in the oil house. At the last shot he saw that the gun was on fire and then that his clothes were on fire. He ran out of the oil house, threw away the pistol and jumped into a water tank and extinguished the flames. He was badly burned.

The pistol, which is in evidence as an exhibit, is in appearance somewhat similar to a real automatic gun. It is made of steel, is four and one-half inches long and its shipping weight is about six ounces. It has a trigger but no hammer. It does not shoot ammunition, nor does anything come out of the muzzle when it is discharged except sparks caused by friction of a file-like piece of metal with what is called pyrophoric alloy which is contained within the metal framework. The mechanical operation of the toy pistol is similar to that of a cigar lighter.

A chemist testified that he made experiments with this pyrophoric alloy by rubbing it with a file and by shooting the toy pistol near a small quantity of gasoline. Each time he tried the experiment the gasoline and air mixture ignited. He further testified, in substance, that the explosive condition was produced by a mixture of the gasoline vapors with the surrounding air; that gasoline itself is not inflammable but when its vapor penetrates the air in a certain proportion the mixture becomes inflammable; that in his opinion the sparks from the pistol would ignite this mixture of gasoline vapor and oxygen.

It was in evidence that the only similarity of the toy pistol to a real gun was in its appearance; that the sparks were harmless to any person; that they could be discharged directly upon the hands or face or upon any kind of clothing without any danger or burning. Plaintiff's mother testified that she saw the plaintiff shooting the pistol around the house at about everything he could see and that the sparks did not do any harm to anything.

Defendant argues that the evidence failed to prove that plaintiff was entitled to maintain his action against it for the reason that there was no contractual relation between them; that the only thing of which the defendant was informed was that it received an order for a toy pistol from William C. Miller and that the pistol was sent by mail to him.

Both parties rely in this court upon the decision in *Davidson v. Montgomery Ward & Co.*, 171 Ill. App. 355, where it was held that a vendor is not liable to third parties who have no contractual relation to him. This case held properly that there were three exceptions to this general rule of liability: (1) Where the act of negligence of the person sought to be held liable is with reference to some article imminently dangerous; (2) where the act of negligence consists in the manufacture or sale of an article defective in construction; and (3) where the act of negligence of the person sought to be held consists of a fraudulent or deceitful statement or representation. Does the evidence show that the instant claim comes within any of these exceptions?

It cannot be said that a toy pistol which does not discharge a missile is imminently dangerous. The evidence abundantly proves that the pistol in question could be discharged against any person or object with impunity. While it resembled a pistol in appearance, it was in fact simply a toy discharging harmless sparks produced by friction. While at most any innocent

article might under some extraordinary circumstances injure a person, yet, this does not render the article itself inherently and imminently dangerous. Articles like poison, gunpowder, a torpedo, a spring gun, a loaded rifle and the like have been held in and of themselves to be dangerous. *Loop v. Litchfield,* 42 N. Y. 351. It was well said in this case that there is scarcely an object in art and nature from which an injury may not occur under some circumstances, but that is not the test as to whether a thing is inherently and imminently dangerous. Other cases touching this point are *Longmeid v. Holliday,* 6 Exch. 761, commented upon with approval in *Bragdon v. Perkins-Campbell Co.,* 87 Fed. 109; *Cadillac Motor Car Co. v. Johnson,* 221 Fed. 801.

Here the unfortunate accident happened because of the unusual circumstances of gasoline exposed in a small closed room, with sufficient lapse of time to cause just the proper combination between the gasoline vapors and the oxygen in the air which would ignite from the slightest cause and which did ignite when the sparks from the pistol were discharged into this inflammable atmosphere.

It is not alleged in the declaration nor is there any proof that the toy pistol was defective in construction. Therefore cases dealing with accidents occurring through defective construction of an article are not in point.

Plaintiff's declaration did not allege that the defendant fraudulently or deceitfully misrepresented the toy pistol to be harmless when it was in fact dangerous, nor was there any evidence in the record tending to show this to be the fact. Fraud and deceit, like any other fact, must be affirmatively shown, and to make out such a case there must be proof of knowledge and intent to deceive on the part of the one making the representations, and this knowledge and intent must rest upon the fact that the article in question is other-

wise than as represented. The evidence shows that the toy pistol was harmless when used as an ordinary toy pistol would be used. There are many ways in which the pistol might be used to inflict injury, as by throwing it at some one or striking some one with it, or other unusual uses. The representation that the pistol was harmless referred to the ordinary and usual uses of a toy pistol under reasonable conditions. The danger was in the highly inflammable mixture of the gasoline and air, which might readily become ignited through a variety of causes not connected with the toy pistol.

We are of the opinion that upon the record the instruction of the trial court that the jury should return a verdict of not guilty was proper, and the judgment thereon will not be disturbed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.