William F. Crist, an Infant, by Abraham L. Spero, His Guardian ad Litem, Appellant, *v.* The Art Metal Works, Respondent. (Action No. 1.)

Joseph Wallace Crist, Appellant, *v.* The Art Metal Works, Respondent. (Action No. 2.)

First Department, June 23, 1930.

*Joseph Sussman* of counsel [*Sussman & Sussman*, attorneys], for the appellants.

*Almet R. Latson, Jr.*, of counsel [*Latson & Tamblyn*, attorneys], for the respondent.

SHERMAN, J. Plaintiffs appeal from orders granting defendant's motion to dismiss, in advance of trial, the complaint in each case, the first action being for personal injuries sustained by the infant plaintiff, and the second action, by his father for loss of services and medical expense, on the ground that the complaints (which are identical in averments to fix liability) do not set forth facts sufficient to constitute a cause of action.

Defendant is a manufacturer of toy revolvers and " advertised the same for use, especially by children and infants of tender years as a means and source of fun, play, joy and amusement." The complaint sets forth fully the advertising matter circulated by defendant, which asserted in bold type that this children s toy was " absolutely harmless," and employed other phrases, indicating that under no circumstances could harm befall the infant user. The appeal was to children to obtain and use it; they or their parents, for them, were the intended purchasers. The complaint describes the mechanical construction and operation of this revolver, and further alleges that defendant was negligent and careless in its advertising of the revolvers, in the manner set forth, and in failing adequately to warn users against possible dangers in its use and thus breached its duty to the public and to those who might be induced to place it in the hands of infants to their danger. The complaint charges that the pistol was advertised and distributed particularly for use during the Christmas holidays.

The infant plaintiff was seriously injured while dressed during the Christmas season in a Santa Claus costume when the flame emanating from the barrel of the revolver ignited the material used as Santa Claus' whiskers and the " soft cotton material " forming a part of that costume.

The complaint here is sustained by the decision in *Henry* v. *Crook* (202 App. Div. 19), where the court (in an action in which both the immediate vendor and the advertising manufacturer were defendants) stated in reference to an advertisement regarding a toy known as " sparklers " through the use of which a child was burnt (p. 21): " The statement that they may be used indoors, where are usually rugs and carpets and other inflammable materials during the holiday time, would give one the impression that a fire could not be ignited by their use. The clothing of children is often sheer and easily inflammable."

In that case, however, the advertisement contained some warning, viz., " Do not touch glowing wire." That article was not proclaimed by its manufacturer to be " absolutely harmless " as here. The court there held that the warning was not sufficient in view of the circumstance that the articles were intended to be used by children who were entitled to be warned of danger. The advertising matter, here, contained no warning whatever; on the contrary, the defendant's advertisement was designed to allay all fear of possible injurious consequence to a child user. Where a manufacturer markets an article with such a sweeping and unqualified representation that a child could not be hurt by it, an infant user actually damaged by its use is entitled to show the circumstances under which the pistol was purchased and to prove how the injury resulted and may not be summarily deprived of a trial upon which to make such proof.

The importance of the circumstance that this pistol was made by defendant to be sold for use, not by the general public, but by a class, viz., infants of tender years, is not to be overlooked. Other cases cited by appellant refer to articles which primarily were intended to be used by adults. In many instances when so used they were not dangerous, and the court held that there could be no recovery against the manufacturer unless the otherwise harmless article was such as would be expected to become capable of inflicting injury when negligently constructed.

For instance, the large coffee urn, in *Staller* v. *Ray Manufacturing Co.* (195 N. Y. 478), or the bottle of aerated water, in *Torgesen* v. *Schultz* (192 N. Y. 156), were articles of such character that they were liable to become a source of danger if not properly constructed and recoveries against the manufacturer were allowed.

But no cause of action existed for negligence against the manufacturer and vendor where through the breaking of a defective bed after long use, plaintiff was injured. It was not a likely source of danger in any event. (*Field* v. *Empire Case Goods Co.*, 179 App. Div. 253.)

The cases bearing upon the nature and extent of the liability of the manufacturer to the ultimate purchaser for negligence are discussed and analyzed in *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382). Underlying the manufacturer's liability is the danger reasonably to be foreseen from the intended use of the article. The advertising matter accompanying it may induce the use in such manner as to make an otherwise harmless article a source of danger. A product designed to be used by adults who may be expected to exercise care may not be dangerous, but when intended to be placed in the hands of inexperienced children who may seek to enlarge their knowledge by experimentation of various and sometimes unsuspected character, it may be a source of peril, and the danger would be increased if the manufacturer represented that under no circumstances could the infant user be harmed. The manufacturer must be deemed to have known that children during the Christmas season, in portrayals of Santa Claus or at other times in the production of plays or pageants, or in attendance at gatherings, would probably be garbed in inflammable material and that to place a pistol of this character in the hands of a child might result in damage.

The present appears to be not the only instance where an infant has been injured while using a like revolver made by defendant, for a similar toy pistol was discharged by an infant and the sparks caused a mixture of gasoline vapor and oxygen to ignite. (*Miller* v. *Sears, Roebuck & Co.*, 250 Ill. App. 340.) Respondent here relies largely upon the decision in that case (*Miller* v. *Sears, Roebuck & Co., supra*), in which the court said (p. 346): " We are of the opinion that upon the record the instruction of the trial court · that the jury should return a verdict of not guilty, was proper, and the judgment thereon will not be disturbed." That conclusion, however, rested upon the particular circumstances there proven at trial. That plaintiff was at least afforded his day in court and given an opportunity to present his evidence.

In order to sustain the order and judgment below, this court would be required to hold that no matter what proof might be introduced upon trial as to the acquisition of the pistol and the circumstances of this accident, defendant is immune from damages. We cannot say as a matter of law, accepting the allegations of the complaint as true, that defendant discharged its full duty and that no

question exists for the jury to pass upon. A jury may or may not find upon proper proof that the pistol used by the infant plaintiff which ignited his costume was harmless. Whether there was contributory negligence is likewise a jury question.

The judgments and orders appealed from should be reversed, with costs, and defendant's motion for judgment on the pleadings denied in each action, with ten dollars costs.

McAvoy and O'Malley, JJ., concur; Merrell and Martin, JJ., dissent.

Merrell, J. (dissenting). The first of these actions was brought by William F. Crist, who sues as an infant by his guardian *ad litem* against the defendant, and is brought to recover damages for personal injuries which plaintiff alleges he sustained as the result of the negligence of defendant. The second action is brought by the father of the infant plaintiff in the first action to recover damages for loss of services of his said son and for medical aid and attendance to the infant plaintiff as the result of the injuries which he claims to have sustained by reason of the defendant's negligence.

The complaint in the first action is a rather peculiar document in that it is nowhere therein alleged that the plaintiff suing as an infant is, in fact, an infant, nor is the age of the plaintiff anywhere stated. The only allegation in the complaint concerning the infancy of the plaintiff is the twenty-seventh, wherein the plaintiff alleges: " That heretofore and by an order of this court, Abraham L. Spero was duly appointed the guardian *ad litem* of the infant plaintiff herein for the purposes of this action." It is alleged in the complaint that the defendant is a foreign corporation organized under the laws of the State of New Jersey, and doing business in the State of New York, and that the defendant manufactured and advertised for sale a certain toy known as a Ronson revolver; that said revolvers were sold to the general public and advertised for use by children and infants of tender years as a means and source of fun, play, joy and amusement. Plaintiff alleges that defendant well knew or ought to have known and intended that the said revolvers were to be used by children and infants of tender years for play and amusement, and that the users of such revolvers were immature and not chargeable with a sense of danger or capable of exercising ordinary prudence and care while using said revolvers. Plaintiff further alleges that it was the duty of defendant in the sale and distribution of said toy to properly and carefully warn and guide the public in the use thereof and to admonish, warn and instruct those who were intended to use the instrument in the use thereof so that they would not suffer harm or

bodily injury from such use. Plaintiff then sets forth at length in his complaint a description of the revolver in question, which description is taken from a circular contained in a carton inclosing each separate revolver. On the carton itself there appears the picture of a small boy discharging a Ronson revolver, and on the circular inclosed in the carton with each revolver there is a description of the toy by a picture showing the emission of a flame of sparks from the toy. On the circular it is stated: "In looks and action just like the real thing. B-A-N-G! F-L-A-S-H! S-M-O-K-E!" and the further statement that it is "absolutely harmless." Elsewhere throughout the circular the line of toys, known as Ronson toys, are described as "absolutely harmless." In the 10th paragraph of his complaint plaintiff alleges: "Upon information and belief that the Ronson Revolver hereinbefore referred to consisted of a mechanical hand operated toy of the shape, size and form of a regular revolver which upon being operated discharged a flame of sparks caused by the friction between two metals confined within the barrel of the said revolver." This allegation in the complaint seems to be entirely truthful and an accurate description of this toy. The toy is simple in construction and is in appearance quite like an ordinary revolver. Within the barrel there is a sharp point of hardened steel and beneath it a roughened surface of steel resting against the point. In "cocking" the revolver this long portion of roughened steel is drawn back and upon pulling the trigger this is released, causing it to spring forward, and rubbing against the steel projection above causes the sparks to fly from the muzzle of the revolver. The sparks are what are known as cold sparks, having no heat whatever, and are caused in precisely the same manner that sparks were obtained from flint by the striking of a hard metallic substance against flint before the invention of percussion caps or present-day cartridges. These sparks, when fired into gunpowder or other highly inflammable substance, would, on some occasions, ignite the same, and thereby either the inflammable material was ignited or explosion of the gunpowder resulted. Plaintiff bases his claim for recovery upon the theory that in advertising this revolver as absolutely harmless and in failing to properly warn the general public of the danger in the use of the same, the defendant was guilty of negligence and of a violation of its duty to the general public and purchasers of said revolvers to properly guide and warn them in the use thereof and in misleading them in the belief that said revolver could be used without care, caution or restraint. Plaintiff then alleges in the complaint that a quantity of Ronson revolvers were purchased by the Crist Department Store in Circleville, Ohio, in May, 1926, and that such revolvers were delivered at said store by

the defendant in November of that year, so that the same could be used and sold during the Christmas holidays; that on December 11, 1926, while plaintiff was in the act of demonstrating, among other toys, one of the Ronson revolvers, and while demonstrating the same in the show window of said Crist Department Store in full view of the general public in the city of Circleville, Ohio, and while plaintiff was dressed in a Santa Claus suit for the purpose of such demonstration, which suit was trimmed along the edges thereof with a soft cotton material and as a part of which disguise plaintiff was covered about the face and chin with whiskers consisting of fine hairs, and relying on the advertisements, warranties and representations of defendant, its agents and servants as to the absolutely harmless nature of the Ronson revolver, the plaintiff took and fired one of the Ronson revolvers, and the sparks or flame emitted therefrom set fire to the whiskers or soft cotton material or both of the Santa Claus suit, as a result of which plaintiff became entirely enveloped in flames and his entire suit caught fire, inflicting upon him serious, painful and permanent injuries, both externally and internally, about his head, body, face and limbs, and he was for a long time confined to the hospital as the result of said injuries, and, as he alleges, suffered serious permanent disability and shock to his nervous system.

The defendant answered in the action, virtually denying all of the material allegations of the complaint, and as a defense alleging contributory negligence on the part of the plaintiff. Defendant then moved for an order granting judgment to defendant against plaintiff on the ground that the complaint did not state facts sufficient to constitute a cause of action. The Special Term, to which said motion was directed, granted the same, the justice presiding rendering a short memorandum opinion, as follows: " Motion is granted, with ten dollars costs. It seems to me that the language of the advertising matter may not be construed as a warranty or representation that the revolver, which ' upon being operated discharged a flame of sparks,' as the complaint alleges, would not cause ignition if brought too close to highly inflammable material. In brief, the language of the advertising matter may not be construed as representing that fire will not burn. The disputed exhibits were not considered. Settle order."

We believe the Special Term was entirely correct in holding the complaint of the plaintiff bad for insufficiency.

Aside from the variance in the amount demanded as damages and the basis thereof on the part of the father's action, the complaints in both actions are identical.

Upon the argument of the appeal it was stipulated that one of the

revolvers, the advertising circular, and the carton inclosing it be submitted to the court, although none of them was before the court at Special Term.

The complaint contains no allegation concerning the circumstances under which the infant plaintiff was demonstrating the revolver in question to public view in the show window of the Crist store at Circleville, Ohio, nor does it appear how the plaintiff obtained possession of said toy. The complaint does not allege any defect in the manufacture of the revolver. It is not alleged that the defendant was guilty of any negligence in the manufacture of this toy, nor is there any allegation of fraud or deception on the part of defendant under which a defective product was manufactured and sold. There is no allegation in the complaint from which the court could possibly conclude that the toy revolver was inherently dangerous. There is no allegation of any latent defect in the manufacture of the toy. The only allegation is that the sparks and flame emitted from this toy ignited the highly inflammable material, such as absorbent cotton and fine whiskers, which burned the plaintiff when seated in the show window of his grandfather's store. As a matter of fact, no flame does come from the operation of this revolver. There is merely a shower of cold sparks resulting from the grinding of hard, metallic substances against each other, which causes the appearance of flame. There is no allegation in the complaint that the sparks or flame emitted from the revolver burned the skin or flesh of the boy, and it is not alleged that the defendant stated or suggested by implication or otherwise that the sparks emitted from the revolver were different from other sparks or flame created by the friction of two metallic substances or of metal upon flint. On the contrary, it is alleged in the complaint and in the advertisement contained in the illustrations upon the circular and upon the carton, that the revolver in action does discharge sparks or flame of sparks. There is no allegation whatever of any intentional fraud perpetrated by defendant. Indeed, counsel upon the argument of the appeal disclaimed any such contention. There is no negligence whatever in the manufacture of the pistol alleged in the complaint. Between the plaintiff and the defendant there was no privity of contract and the plaintiff seeks to recover solely upon the ground of liability on the part of the manufacturer of an article sold to a third person. The leading early case on the question was that of *Thomas* v. *Winchester* (6 N. Y. 397), where poison was falsely labeled by the manufacturer and sold to a druggist who in turn sold it to a customer. The customer was awarded damages from the seller because of the latter's negligence in failing to properly label the ingredients of the bottle, putting human life in imminent

danger. In *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382) the whole question was exhaustively discussed by Judge CARDOZO. In that case the doctrine of *Thomas* v. *Winchester* (*supra*) was extended to articles inherently dangerous to human life, and to articles which, if defectively manufactured, were imminently or inherently dangerous to human life because of such defect in manufacture. In *Mac-Pherson* v. *Buick Motor Co.* the theory upon which a recovery was allowed was that in manufacturing an automobile, which was held to be distinguished from a horse-drawn wagon, the seller had put out an article inherently or imminently dangerous. In that case there was a latent defect in the manufacture of a wheel of the automobile. In the case at bar there is no allegation that the article is either imminently or inherently dangerous. Plaintiff, however, seeks to extend the doctrine of *MacPherson* v. *Buick Motor Co.* to a case of negligence from advertising an article as absolutely harmless or in failing to warn the public of dangers to be expected from its use. The appellant must concede that the doctrine of an imminently dangerous article will not avail him because of the decision in the *Buick Motor Co.* case holding that such imminently dangerous condition must arise only through the negligence in manufacture. We think the toy pistol in question was not an instrument inherently dangerous. There is no allegation of the complaint that there was any defect in its manufacture. The only allegation upon which plaintiff seeks to recover is that the defendant was negligent in failing to warn of the danger to be expected from the use of the toy. The very question presented upon this appeal was up in the case of *Miller* v. *Sears, Roebuck & Co.* (250 Ill. App. 340). In that case the Superior Court of Illinois held a complaint against Sears, Roebuck & Co., the well-known mail order house, which had purchased some of these same Ronson revolvers and resold one to the plaintiff, could not be sustained, the court expressly holding that the toy in question was not an inherently dangerous article. We think the revolver itself, not being inherently or imminently dangerous, the question as to the sufficiency of the allegation of the complaint becomes one of law, and is not a question of fact for the jury. In *MacPherson* v. *Buick Motor Co.* the trial justice charged the jury concerning the question as to what articles are and what articles are not inherently dangerous or imminently dangerous. In his opinion in that case Judge CARDOZO drew the distinction between a horse-drawn wagon and an automobile, and held that negligence of a manufacturer in incorporating into an automobile a defective wheel gave rise to a cause of action, whereas, if the manufacturer of a wagon had built therein a defective wheel, no cause of action would have arisen to one injured as the result of such

defective wheel. Judge CARDOZO held that in the *Buick Motor Co.* case the defect in manufacture produced an imminently dangerous article, whereas in the other no such condition resulted. In the *Winchester* case and in the case of *Torgesen* v. *Schultz* (192 N. Y. 156) the court held that questions of law were alone presented for the court's determination. In the latter case a question of law was presented whether a defective syphon bottle was an imminently dangerous article, and the court decided that it was. So far as we have been able to ascertain, all of the cases relied upon by the appellant involved some defect in manufacture of the article complained of. There is no such charge against the defendant in the case at bar. In *Field* v. *Empire Case Goods Co.* (179 App. Div. 253) the court held that the bed alleged to be an inherently dangerous article was not such; and in *Greenberg* v. *Advance Furniture Co., Inc.* (201 App. Div. 848) this court did the same thing. In *Jaroniec* v. *Hasselbarth, Inc.* (223 App. Div. 182) it was held that a question of law was presented as to whether a mattress was not an inherently dangerous article, the plaintiff in that case having been injured by steel protruding from the mattress. It was held in that case that the mattress was not an inherently dangerous instrument.

The appellant, however, apparently rests his claim upon the theory that the defendant was liable for advertising this pistol as absolutely harmless, whereas, in fact, the plaintiff's clothing was ignited from the use of the pistol. As before stated, in the Illinois case this very pistol was held to be not inherently dangerous. In *Kuelling* v. *Lean Mfg. Co.* (183 N. Y. 78), in a well-considered opinion by Judge BARTLETT, it was said (at p. 89): " The cases establish the legal principle that one who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong, without regard to the contract, and is liable in damages to any person, including one not in privity of contract with him, who suffers an injury by reason of his willful and fraudulent deceit and concealment," and in the opinion Judge BARTLETT stated (at p. 85): " ' There must have been a false representation, known to be such, made by the defendant, calculated and intended to influence the plaintiff, and which came to his knowledge, and in reliance upon which he, in good faith, parted with property or incurred the obligation which occasioned the injury of which he complains.' " In the case at bar there was no allegation of fraud to bring the case within the authority of the *Kuelling* case. In *Field* v. *Empire Case Goods Co.* (179 App. Div. 253) it was held: " It is clear, therefore, that an action cannot be maintained upon the facts alleged in the complaint, which do not remove the case from the general rule that *an action for negligence cannot be main-*

*tained by a third person against the manufacturer of an article not in and of itself imminently and inherently dangerous."* (Italics are the writer's.)

It seems to us, therefore, where, as in this case, there is an entire absence of privity of contract between the manufacturer of the toy and the plaintiff there can be no recovery for personal injuries, unless the article was inherently or imminently dangerous and defectively manufactured or where the manufacturer was guilty of some fraud or deceit in concealing known defects in the manufacture rendering the article dangerous. In the case at bar there was no allegation that the article was imminently or inherently dangerous or defectively manufactured nor is there any claim of fraud or deceit on the part of the manufacturer of the revolver. On the other hand, the manufacturer of the revolver advertised the same to emit a flame of sparks. It is a matter of common knowledge that sparks such as come from flint or the striking together of hard metal when properly applied to inflammable material will induce a fire and flame.

We think the defendant in advertising this revolver as absolutely harmless did so concerning the ordinary use of the toy pistol. It is a matter of common knowledge that many fatalities result from the use of toy pistols and that tetanus following the use of toy pistols is annually prevalent. Organized means are adopted to avoid the danger resulting from such use. That the revolver in suit as such was entirely harmless in every respect seems entirely clear. When the defendant represented this pistol to be absolutely harmless it was with reference to its being harmless in its ordinary use as a pistol. Used in the ordinary way for which it was intended to be used it was harmless, but when used in a manner in which the infant plaintiff used it, injury, of course, resulted. The manufacturer of the article could not be expected to foresee the use of this toy pistol in the manner in which it was used by the plaintiff at the time his clothing was ignited. When the article was represented as being absolutely harmless it was as a pistol and not otherwise. Unquestionably this little toy pistol might be used as a weapon of offense and might cause serious injury by being used by a small boy in striking a companion. As well might it be said that the manufacturers of baseball bats in general use by children should warn against the danger of using a bat otherwise than in the use for which it was intended. It very frequently happens that a baseball bat in the hands of a small boy may be and is used as a weapon of offense and may thus cause very serious injury, although, as ordinarily and properly used the bat would be entirely harmless. We think the defendant should not be held to have foreseen that

this toy pistol held in close proximity to highly inflammable material, such as fine hair and absorbent cotton of a Santa Claus disguise would ignite the same, nor was defendant called upon to warn against such unusual use. There would be as much reason in holding that if the pistol was shot into a piece of dynamite or into gunpowder or into nitroglycerine or gasoline the defendant should have stated that a fire or explosion would result. The fact of the matter is that this unfortunate accident to the plaintiff was not due to the toy revolver, but to the manner in which the plaintiff was there attired in highly inflammable material and placed in the show window of his grandfather's store where his clothing became ignited. In *Miller* v. *Sears, Roebuck & Co.* (250 Ill. App. 340), involving this same pistol, the plaintiff received his injuries while drawing gasoline from a large tank by direction of his mother and in so doing shot the revolver continuously into the gasoline resulting in its ultimate ignition and explosion. The Illinois Superior Court in that case rendered a very good opinion, which is peculiarly pertinent to the facts in the case at bar, involving as it does the use of the same toy as that here involved. The Illinois court said in that case: " Here the unfortunate accident happened because of the unusual circumstances of gasoline exposed in a small closed room, with sufficient lapse of time to cause just the proper combination between the gasoline vapors and the oxygen in the air which would ignite from the slightest cause and which did ignite when the sparks from the pistol were discharged into this inflammable atmosphere.

" It is not alleged in the declaration nor is there any proof that the toy pistol was defective in construction. Therefore, cases dealing with accidents occurring through defective construction of an article are not in point.

" Plaintiff's declaration did not allege that the defendant fraudulently or deceitfully misrepresented the toy pistol to be harmless when it was in fact dangerous, nor was there any evidence in the record tending to show this to be the fact. Fraud and deceit, like any other fact, must be affirmatively shown, and to make out such a case there must be proof of knowledge and intent to deceive on the part of the one making the representations, and this knowledge and intent must rest upon the fact that the article in question is otherwise than as represented. *The evidence shows that the toy pistol was harmless when used as an ordinary toy pistol would be used. There are many ways in which the pistol might be used to inflict injury, as by throwing it at some one or striking some one with it, or other unusual uses. . The representation that the pistol was harmless referred to the ordinary and usual uses of a toy pistol*

*under reasonable conditions. The danger was in the highly inflammable mixture of the gasoline and air, which might readily become ignited through a variety of causes not connected with the toy pistol."* (Italics are the writer's.)

It was certainly an act of contributory negligence on the part of this boy if *sui juris* or of his guardian if *non sui juris* in placing him in an extremely hazardous position dressed in highly inflammable material and placing at his disposal one of these pistols advertised to emit a flame of sparks. This pistol, while advertised as harmless, was not advertised as fool-proof. The discharge of the pistol emitted no projectile and caused no burn.

The appellant relies largely upon the case of *Henry* v. *Crook* (202 App. Div. 19), a decision of the Third Appellate Division from which an appeal does not appear to have been taken and which appears never to have been cited in any other case. In that case, however, the plaintiff's injuries were sustained as the result of a small wire covered with combustible substance which was lighted and in burning threw off sparks and burning particles. The infant plaintiff, a girl, was injured through the ignition of her clothing from the burning coal upon the wire. The facts in the case at bar are entirely distinguishable from those in the *Crook* case. In the *Crook* case there was a representation on the wrapper containing the sparklers that " the sparks are harmless," and that the contrivance was a perfectly harmless article for indoor and outdoor celebrations. The Third Appellate Division held that the language of this representation would give one the impression that a fire could not be ignited from their use. The court held that the manufacturer should have gone further and warned the public that the resulting coal upon the wire might ignite inflammable material. In the case at bar there is no allegation that the defendant represented that the sparks or flame of sparks emitted from the revolver would not set fire to inflammable material. On the contrary, the illustrations upon the folder and upon the carton containing the revolver clearly show that by using the same under some circumstances a burning fire would result.

We do not think there is any cause of action set forth in plaintiff's complaint. The judgments and orders appealed from should be affirmed, with costs.

MARTIN, J., concurs.

In each case: Judgment and order reversed, with costs, and motion denied, with ten dollars costs.