Minnie Shepard, Appellee, v. Kensington Steel Company et al., Defendants.
Appeal of Ben T. Wright, Inc., Appellant.

Gen. No. 34,587.

HEBEL, J., dissenting.

Opinion filed June 15, 1931.

CHURCH, HAFT, ROBERTSON & CROWE, for appellant; BURT A. CROWE, of counsel.

AUGUSTINE J. BOWE and WILLIAM J. BOWE, for appellee.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

The plaintiff, Minnie Shepard, brought her action against Ford Motor Company, Ben T. Wright, Inc., and Kensington Steel Co., to recover damages for an injury sustained by reason of the alleged negligence of the defendants.

From the facts it appears that the Kensington Steel Co. had purchased from its codefendant, Ben T. Wright, Inc., a Ford truck, which it paid for in full on the day of the purchase and which was driven away from the place of business of the Ben. T. Wright, Inc., at 1111 North Clark street, by one Olson, an employee of the Kensington Steel Co. The car had been driven a distance of about six miles and was proceeding at a rate of speed of about eight miles an hour, when one of the wheels of the truck became detached and continued rolling down the pavement on State street in the City of Chicago, and struck the plaintiff who was standing at the southeast corner of State street, waiting for a car. The truck was supposed to have been a new truck which had recently been purchased by Ben T. Wright, Inc., the retail dealer, from the Ford Motor Company. The wheel was presumed to have been fastened to the axle with five bolts and nuts, regular standard Ford equipment. There is testimony in the record to the effect that the defect was one which an ordinary examination by a purchaser would not disclose.

For the purpose of the argument, we are assuming that the Ford car was defectively constructed; that this fact should have been discovered by a proper inspec-

tion, and that the vendor would have been liable to the purchaser or its employee while driving the car because of its defective condition and construction.

Upon the trial of the cause the trial court directed a verdict of not guilty as to Ford Motor Company and the jury returned a verdict finding the Kensington Steel Co. not guilty. At the same time a verdict was returned in favor of the plaintiff and against the defendant Ben T. Wright, Inc. and plaintiff's damages assessed at $5,000. Upon a remittitur of $1,500 judgment was entered for the plaintiff and against the defendant Ben. T. Wright for $3,500, from which judgment this appeal has been prayed and perfected.

The only question involved appears to be whether or not there was such a causal relationship between the plaintiff and the automobile dealer as to create a liability in her favor against the defendant, the dealer who sold the car to the Kensington Steel Co.

The general rule is well stated in Cooley on Torts, Vol. 2, 3rd Ed. page 1486, as follows:

"The general rule is that a contractor, manufacturer, vendor or furnisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of such article."

A clear and concise expression of this rule has been laid down in the case of *Garland v. Boston and Maine Railroad,* Am. Ann. Cases, 1913, E, page 924:

"It has usually been held that facts which create a relation and therefore a duty as to one, do not establish the same obligation to all mankind. To be within the right created, the complaining party must show facts which make the reason for claiming a relation applicable to him. The proposed rule is an abandonment of this idea and seeks to make the obligation to use care, which springs from the relationship, a duty owed to everybody who by chance comes within the range of the influence of the act complained of.

The argument is that since the act is one the defendant should have refrained from doing, it is just that he be responsible for all its consequences. But this is a partial view of the situation only. The act is not wrongful in itself. (Its wrongfulness is found in its probable effect upon others who are in some relation to the actor. Remove these related parties from the situation and the act is entirely lawful. As to the unrelated parties the happening is a pure accident."

The leading English authority in support of this rule is contained in *Winterbottom v. Wright,* 10 Meeson & Welsby 109. This was an action by a driver of a stage coach against a contractor who agreed with the postmaster general to provide and maintain a certain vehicle in repair for the purpose of conveying mail over and along a certain designated route. While it was being driven by the plaintiff in that case, it broke down and the driver was injured and brought his action to recover because of the defective construction of the coach. The court in its opinion said: ". . . if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who enter into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue."

In the case before us there was no contractual relation between the dealer who sold the Ford truck to the Kensington Steel Co. and the plaintiff. It is argued and insisted that, when the dealer permitted the truck to go out upon a public street in its defective condition, it permitted the use of an agency, in the hands of the vendor, which was dangerous to any person upon the street over, upon and along which the truck was proceeding. Morally this might be true, and there would appear to be an obligation on the part of the vendor of a machine, under such

circumstances to the public at large. We are unable to see, however, any legal obligation existing on the part of the vendor, the defendant here, toward the plaintiff. If the law should recognize such an obligation as a legal obligation, the vendor of an automobile would be bound not only to the purchaser and those who used the machine, but to the entire public and would open the door of litigation to such an extent that it might never again be closed. Its results would be far-reaching and in most instances remote. While the remoteness might be controlled as a question of law by the court, nevertheless, this very question of remoteness, in itself, would be one involving innumerable actions, and open the door in every instance to permit a question of fact instead of law.

The law has already recognized many exceptions to the rule as in the case of the sale of poisons, explosives and deadly weapons, and things of like character which are inherently dangerous in themselves and liable to injure or destroy. The exception has also recognized the liability of manufacturers of foodstuffs to those who purchase or consume edibles containing poisonous substances or dangerous instrumentalities which have entered into their makeup by reason of the negligence of the manufacturer.

The courts have also extended the rule as announced in the English case of *Winterbottom v. Wright, supra,* so as to include not only the vendee, but those using the instrumentality. The rule in New York State has been extended and defined, as extended, in *MacPherson v. Buick Motor Co.,* 217 N. Y. 382. In that case the manufacturer of automobiles sold one of its machines to a retail dealer who, in turn, resold to the plaintiff. While there was no direct contractual relation between the manufacturer and the purchaser, nevertheless, the purchaser was allowed to recover for injuries sustained by reason of the collapse of the machine while he was in the act of driving it. It was

held that the manufacturer was liable because of the fact that it should have been known that when it sold the car to a dealer, that it was for the purpose of a resale and use by the vendee from the dealer. It must have been foreseen by the manufacturer that the automobile was to be used as such and, in permitting a defective machine to be placed upon the market, it was under an obligation to such prospective purchaser or user to see to it that the automobile was safe for the purpose intended. As stated by the court in its opinion, "There is no break in the chain of cause and effect. In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty."

To the same effect is *Olds Motor Works v. Shaffer*, 145 Ky. 616; *Johnson v. Cadillac Motor Car Co.*, 261 Fed. 878; *Colbert v. Holland Furnace Co.*, 333 Ill. 78. In the latter case it appears that the Holland Furnace Co. installed a hot air furnace in the home of one Colbert, the husband of the plaintiff who brought the action. A register was installed in the house for the purpose of allowing the entry of air into the kitchen. While the plaintiff was working in the kitchen she stepped on the grating or register, which gave way, and she was injured. The court in its opinion says:

"Defendant in error did not sign the contract and is not mentioned therein and cannot be regarded as a privy to the contract. In view of the contractual relation between Colbert and plaintiff in error, the latter invokes the general rule that 'where an independent contractor is employed to construct and install any given work or instrumentality and has done the same and it has been accepted by the employer and the contractor discharged, he is no longer liable to third persons for injuries received as a result of defective construction or installation.' That this is

the general rule is not questioned. The rule, however, has several exceptions, and the question to be here determined is whether, under the facts as shown by the evidence in this case, it comes within any of such exceptions. One of the well recognized exceptions to the rule is, that one who supplies a thing for such use by others that it is obvious that any defect will be likely to result in injury to those so using it is liable to any person who, using it properly for the purpose for which it is supplied, is injured by its defective condition. . . . The grating was installed for use as a part of the floor of the kitchen and was manifestly intended for the use of any of the inmates of the household, and especially of defendant in error, whose duties required her frequent presence in the kitchen. The grating was defective and the defect was of such a character that it was obvious to the one installing it that using the grating as a part of the floor would be likely to result in injury to those so using it.''

An examination of these cases in our opinion shows that the common law rule has been extended only to the extent that it includes not only the vendee, but those who might be using the instrumentality itself by or with the permission or consent of the vendee, and only in those cases where it is evident that the instrumentality was intended for the use of and by others, and so used.

The Ford truck in the case at bar was not a dangerous instrumentality in and of itself. Like any other motor propelled vehicle, it might be dangerous in the hands of incompetents, reckless or inexperienced drivers, subnormals or nitwits. The machine itself was not a dangerous machine and there is no evidence in the record to the effect that the defendant dealer in this case wilfully or wantonly placed the car upon the street in the hands of others, knowing that such an accident as occurred in this case was

liable to occur. The Supreme Court of this State has held in *Arkin v. Page,* 287 Ill. 420:

"An automobile is not so dangerous an agency as to make the owner liable for injuries caused by it to travelers on the highway, regardless of the agency of the driver. (*Danforth v. Fisher,* 75 N. H. 111; *Steffen v. McNaughton,* 142 Wis. 49; *Jones v. Hoge,* 47 Wash. 663.) "

We are not prepared to extend the rule beyond that cited in the cases referred to in this opinion. There was no contractual or other relationship between the plaintiff and the defendant, Ben T. Wright, Inc., upon which, in our opinion, a legal liability could be predicated. The only relationship existent was between the plaintiff and the owner of the truck, the Kensington Steel Co., which was operating the car at the time of the accident. The jury by its verdict has absolved this defendant from any liability and the question of its liability, if any, is not before this court.

For the reasons stated in this opinion the judgment of the superior court is reversed and judgment is entered here for the defendant Ben T. Wright, Inc.

*Judgment reversed and judgment here with a finding of fact.*

Finding of fact: The court finds as a matter of fact that the Ford truck in question was sold by the defendant, Ben T. Wright, Inc. to the Kensington Steel Co. without a proper or sufficient inspection. The court further finds that the plaintiff was injured by reason of a defect in the Ford truck which could have been discovered by a proper inspection by the defendant Wright, Inc. The court further finds, however, that there was no legal obligation on the part of the defendant Wright, Inc. to the plaintiff growing out of any contractual or other relationship.

FRIEND, J., concurs.

HEBEL, J., dissenting: I cannot agree with the conclusion of the court that there was no legal obligation on the part of the defendant, Ben T. Wright, Inc., to the plaintiff growing out of any contractual or other relationship, but do agree that the court is justified in finding that the defendant sold the Ford truck to the Kensington Steel Co. without proper or sufficient inspection, and that the plaintiff was injured by reason of the defect in the Ford truck, which could have been discovered by proper inspection.

The defendant before us is a distributing and selling agent of Ford automobiles and Ford trucks. The new one and one-half ton truck in question was sold and delivered by the defendant to the Kensington Steel Co., a codefendant. There is evidence in the record that unless the wheels of the truck are secure and tightly fastened to the flange of the hub of the machine, the momentum of the car while in motion will strip the threads of five bolts used to fasten the wheel, and as a result the bolts and nuts will drop off and the wheel become detached from the truck.

The driver of the Kensington Steel Co. called for the truck and had driven it a distance of about six miles, at the rate of eight miles per hour, from the shops of Ben T. Wright, Inc., when the truck sagged and he saw that the wheel had become detached and was rolling of its own motion along the street. In the course of its motion it ran into and injured the plaintiff, who was waiting for a street car at the intersection of two streets, and after striking the plaintiff it continued to roll on its course for a distance of 150 feet.

There is no evidence that the truck was negligently operated by the driver of the Ford, or that the plaintiff contributed by any act of hers to bring about the accident.

The contention is made by the defendant that there was no privity of contract between the plaintiff and

the defendant; that the Kensington Steel Co. accepted the Ford truck, and the defendant incurred no liability to third parties by reason of the condition of the car; that the responsibility, if any, in using the car in its defective condition, shifted to the Kensington Steel Co.

The rule is that where there is no privity of contract between the parties, generally speaking, there is no liability. However, this rule is subject to several exceptions, one of which is that one who supplies a thing for use by others, if it is obvious that a defect is likely to result in injury to those using it, is liable to any person who, using it properly for the purpose for which it is supplied, is injured by the defective condition. *Colbert v. Holland Furnace Co.*, 333 Ill. 78.

Assuming that the driver of the truck, as well as the plaintiff, was injured as a result of the defective condition of the machine, would the exception to the rule be so restricted that the driver could recover for injuries under the facts in this case, but the plaintiff would be without remedy? That, in my opinion, would be, an unreasonable application of this exception.

The theory of the law, as I understand it, is that the defendant owes a duty not only to the user of the car, but that he is also chargeable with the knowledge that the car is to be used upon a public highway, and that he is bound to make the machine safe for such purpose. The defendant having failed in its duty in permitting a defective machine, one which was dangerous to operate, to be used, as is indicated by the facts in this case, is liable for the injuries to the plaintiff.

The decision of the Supreme Court in the application of the law in the case of *Garibaldi & Cuneo v. O'Connor*, 210 Ill. 284, in principle, applies to the instant case, wherein the court says:

"Abutters upon a public street may use the sidewalks in front of their premises for the purpose of

loading and unloading goods, merchandise or other like articles in which they may deal or use, but the sidewalks belong to the public and the public primarily have the right to the free and unobstructed use thereof, subject to reasonable and necessary limitations, one of which is the right of an abutting property owner to temporarily obstruct the walk by loading or unloading goods, wares or merchandise when such obstruction is reasonably necessary. Such obstruction must, however, be both reasonable as to the necessity therefor and temporary in point of time. The prior and superior right of passage is possessed by the public. . . . The negligent wrongful acts of the appellants contributing to the infliction of the injury were, all of the circumstances of the case being considered, of a nature likely to produce some such injury to passersby. When the intervening cause of an injury is of a nature which could reasonably have been anticipated, the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause.''

This court is not concerned about the press of litigation or the number of suits which may be instituted, or that the result of our decision may be far reaching; we are only concerned with the proper administration of justice, guided by such rules as are established in order that proper and righteous judgments may be entered. The result should not be considered if the conclusion is sound. *Fent v. Toledo, P. & W. Ry. Co.,* 59 Ill. 349.

For the reasons indicated I am of the opinion that the judgment for the plaintiff should be affirmed.