Joseph N. Beadles and Bernice T. Beadles, Plaintiffs-Appellants, v. Servel Incorporated and Union Gas and Electric Company, Defendants. Servel Inc., Appellee.

Gen. No. 9,759.

Opinion filed May 31, 1951. Rehearing denied September 4, 1951. Released for publication September 4, 1951.

STONE, STONE & HESS, and WAYNE C. TOWNLEY, all of Bloomington, for appellants.

HEYL, ROYSTER & VOELKER, of Peoria, for appellee; CLARENCE W. HEYL, and WILLIAM J. VOELKER, JR., both of Peoria, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs-appellants Joseph N. Beadles and Bernice T. Beadles, husband and wife, brought action against Servel, Incorporated, and Union Gas and Electric Company, defendants-appellees, to recover for personal injuries sustained when they were overcome by carbon monoxide gas allegedly produced by a Servel refrigerator, manufactured by Servel Incorporated and serviced by Union Gas and Electric Company. We

shall refer to the parties as plaintiffs and defendants hereinafter in this opinion.

The motion of defendant, Servel Incorporated, to strike the second amended complaint was allowed. Plaintiffs elected to abide by their complaint as amended, and the court ordered the dismissal of the suit as to Servel Incorporated, from which judgment plaintiffs prosecute this appeal.

 In the record there is no mention of a ruling or order by the trial court on the motion of the defendant, Union Gas and Electric Company, to dismiss plaintiffs' second amended complaint. Defendant, Union Gas and Electric Company, made a special and limited appearance in this court, moving to dismiss the appeal as to Union Gas and Electric Company, because no notice of appeal, abstracts or briefs had been served on Union Gas and Electric Company or its counsel. There being no judgment or final appealable order of record by the trial court as to defendant Union Gas and Electric Company, there can be no proper appeal involving it before this court. The motion of defendant Union Gas and Electric Company was granted. *People ex rel. Hesterman v. Chicago, B. & Q. R. Co.*, 306 Ill. 166. The only order this court has jurisdiction to grant is an order of dismissal for want of jurisdiction. *Smith Oil & Refining Co. v. Montgomery*, 335 Ill. App. 342.

Insofar as it concerned Servel Incorporated, plaintiff's second amended complaint may be concisely set forth by considering only Counts I and III thereof, inasmuch as Counts II and IV were identical with the former counts, but related to injuries suffered by Mrs. Beadles. Counts V through VIII, inclusive, related to the defendant Union Gas and Electric Company, upon which there has been no final judgment rendered, and Counts IX and X proceeded upon the theory that both defendants were joint tort-feasors as to each plaintiff, but contained no material allegation as to Servel In-

corporated not included in Counts I and III, to which Counts IX and X referred.

After reciting the facts of jurisdiction and venue, Count I of the second amended complaint alleged that the plaintiff was in the exercise of ordinary care for his own safety; that Servel Incorporated made a gas-operated refrigerator sold to the general public under the trade name and style of ''SERVEL GAS REFRIGERATOR.''

It is further alleged that the operation of this refrigerator requires the burning of a gas flame to assist in the refrigeration process, and that the mechanism designed to provide the gas flame is designed and constructed in such manner as to permit the deposit of uncombusted carbon particles in proximity to the burning flame, which restrict the supply of air available to burn the gas, and that as so constructed, the machine requires a frequent cleaning to provide total combustion of the gas. If the mechanism becomes dirty or encrusted with carbon particles, the air supply is restricted, the gas being burned is not wholly consumed, and carbon monoxide gas is formed, which said gas is a gas dangerous to life and deleterious to health.

Plaintiffs further alleged in Count I that Servel Incorporated knew, or in the exercise of ordinary care ought to have known, that its refrigerator had the propensity for harm set forth above, and that the said machine was inherently dangerous to life when put to the ordinary use for which it was designed, and that it became and was the duty of Servel Incorporated, to advise the purchasing public and those who might come into proximity to its machines, of the inherent danger of the device, but that the defendant negligently failed to do this.

Plaintiffs further alleged that they purchased from one Crone a house in which the refrigerator had been installed by the defendant Union Gas and Electric

Company, without knowledge on the plaintiffs' part of the inherent danger of the Servel machine, which resale defendant Servel Incorporated could reasonably foresee; and that as a direct result of the faulty design of the flame producing device on the refrigerator, the device became dirty and encrusted with carbon particles, the air supplied to the gas flame was thereby restricted, and carbon monoxide gas was given off, which caused the injuries complained of.

In summary then, Count I sought to allege such *design* and *construction* of the machine as to constitute it an inherently dangerous machine, a duty to advise the purchasing public and all who might come into proximity to such machines of the inherent danger thereof and a negligent failure so to do.

Count III, in essence, alleged that in the *ordinary operation* of the refrigerator, a large amount of carbon monoxide gas was given off, which was dangerous to life and harmful to health, a duty on the defendant Servel Incorporated to inform the purchasing public and all who might come into proximity to such machines, of the inherent danger of the device, and a negligent failure by Servel Incorporated so to inform.

Plaintiffs assign as error that the trial court erred in dismissing plaintiffs' complaint.

Defendant Servel Incorporated insists the action of the trial court was correct in that the complaint consisted largely of conclusions of the pleader.

A motion to dismiss a complaint admits those facts as are, directly alleged by the plaintiff. It does not, however, admit conclusions drawn by the pleader. *Barzowski v. Highland Park State Bank,* 371 Ill. 412; *Bailey v. Keck,* 286 Ill. App. 624.

Even construing the complaint most strongly against the pleader on this motion to dismiss, *Garofalo Co., Inc. v. St. Mary's Packing Co.,* 339 Ill. App. 412; *Cates v. City of Bloomington,* 333 Ill. App. 189, we do not agree with defendant's contention that the com-

plaint discloses no allegation of fact that the defendant's product was either negligently or faultily constructed or designed.

■ In view of the allegations of fact concerning the design and operation of the refrigerator in the plaintiffs' complaint, it cannot be said that the complaint consisted of mere conclusions, or that such pleadings failed to set forth a plain and concise statement of plaintiffs' cause of action, nor that such pleadings did not contain sufficient information to reasonably inform the defendant of the nature of the claim it was called upon to meet. (Ch. 110, par. 157, sec. 33 (1), par. 166, sec. 42 (2), Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 104.033, 104.042]). Plaintiffs sufficiently alleged in Count I that they were injured by the negligent construction of the refrigerator so as to constitute such refrigerator an inherently dangerous device, and in Count III set forth that defendant's refrigerator in normal operation was an inherently dangerous machine. It is upon whether these allegations state a cause of action that this appeal must be decided.

This court is thus faced with the question involving the scope of a manufacturer's liability, concerning which controversy has raged since the celebrated case of *Winterbottom v. Wright,* 10 M. & W. 109, was decided. It would unnecessarily expand this opinion to discuss the history of the law of manufacturers' liability as it has developed in other jurisdictions. See: Bohlen, ''Liability of Manufacturers to Persons Other Than Their Immediate Vendees,'' 45 L. Q. Rev. 343; Feezer, ''Tort Liability of Manufacturers,'' 10 Minn. L. Rev. 1.

■ In Illinois the general rule·is that manufacturers are not liable in damages to persons with whom they have no contractual relations for personal injuries sustained by such persons because of the negligent manufacture of the former's product. *Rotche v. Buick Motor Co.,* 358 Ill. 507, 513.

■ To this rule there are three well recognized exceptions: 1. Where the act of negligence of a manufacturer is with reference to some article imminently dangerous to the life or health of human kind; 2. Where an owner commits an act of negligence with reference to some appliance which causes an injury to one invited upon the owners' premises; and 3. Where one, without giving notice of its qualities, sells or delivers an article which he knows to be imminently or inherently dangerous to life or limb. *Davidson v. Montgomery Ward & Co.,* 171 Ill. App. 355, 364. It is well settled that if any one of the above exceptions apply to a given case, there is no necessity of privity of contract to enable the injured person to sue the manufacturer, provided the injured person is himself within the class to which the manufacturer's duty of care applies. *Lindroth v. Walgreen Co.,* 338 Ill. App. 364.

The reason for the exceptions is clear. Limiting recovery to those in contractual privity with the manufacturer becomes inadequate and unjust under our specialized economic system where many middlemen intervene between the producer and the ultimate consumer. See: Note, 14 Minn. L. Rev. 306, 308; Note, 13 Tex. L. Rev. 511, 519–20.

Since plaintiffs admit they had no privity of contract with the defendant Servel Incorporated, it must first be determined whether, in view of the allegations of their second amended complaint, the refrigerator in question could be held as a matter of law to be an inherently dangerous product so as to bring plaintiffs within the applicable exception to the general rule.

The extensive briefs of counsel and the research of this court have disclosed no case in this or any other jurisdiction directly on this point. Defendant cites *In re Borg-Warner Corporation (Norge Division) v. Heine* (C. C. A. 6th), 128 F. (2d) 657 as being decisive. In that case plaintiff, a refrigerator service man, was

140

injured when in the course of repairing a defective refrigerator he began to disassemble the refrigerating unit. As he was about to disconnect a valve a burst of gas struck him in the face and injured him. Plaintiff obtained a verdict and from the ensuing judgment the manufacturer prosecuted an appeal. The circuit court of appeals reversed the judgment, holding that the manufacturer should have been entitled to a directed verdict. It is true that the court in the *Borg* case, *supra,* said that ''a refrigerator is not 'essentially' a dangerous thing.'' But further language of that court distinguishes the *Borg* case from the case at bar wherein we are confronted with an allegation that the refrigerator was dangerous *in its use as a refrigerator.* In the *Borg* case, *supra,* the court stated on page 659:

''We must assume that the refrigerator was defectively constructed in that the solder wholly or partially restricted the flow of gas through the tube, but even so, it gave no warning that *it would be dangerous in its normal use . . . ; and was not dangerous in its use as a refrigerator.* It was not dangerous at all until appellee pulled the needle valve . . .'' (italics supplied).

The decision in the *Borg* case, *supra,* has been criticized. See: Note, 28 Iowa L. Rev. 553. In at least one other case potential liability on facts similar to the *Borg* case has been recognized in the case of a defectively manufactured refrigerator. See: *Toyer v. York Ice Machinery Corp.,* 342 Mo. 912, 119 S. W. (2d) 240. In any event because of the disparity of facts the *Borg* case is not controlling in the case at bar.

The test as to whether a given product is inherently dangerous is certainly not the fact that an injury occurred from its use under unusual circumstances. There is not an object in art and nature from which an injury may not occur under some circumstances. *Miller v. Sears, Roebuck Co. of Illinois,* 250

141

Ill. App. 340. Nor is the test the extreme probability that injury will result from the use of the product, Bohlen, *Ibid.* 45 L. Q. Rev. 343, 358–9, or reciprocally that the product has been used a great many times in other circumstances without harm resulting. *Anglo-Celtic Shipping Co. v. Elliott & Jeffrey et al.,* 42 T.L.R. 297. In that case the defendant manufactured a cleansing fluid for removing scale from boilers and condensers. Three-quarters of a million gallons had been used without accident. When the fluid was applied to the cast iron condensers of plaintiff's ship, explosive gases were generated, became ignited, and the ship was wrecked. ROCHE, J., speaking for the court, noted that the important factor was the harm which the improperly constructed article is likely to cause to persons who use it on the faith of its appearance, in ignorance of the danger of so doing. Similarly, in two early New York cases the use of the term imminently or inherently dangerous can be explained only upon the theory of the gravity of the injury likely to be caused by the particular defect rather than upon the nature of the device itself or upon the probability that injury would occur in its normal use. In *Devlin v. Smith,* 89 N. Y. 470, a scaffold 90 feet high was held to be imminently dangerous, yet in *Swan v. Jackson,* 55 Hun 194, 7 N. Y. Supp. 821, a scaffold only 6 feet high was held not to be imminently dangerous.

██ The true test was and always has been "how dangerous is this chattel with this defect?" See: Note, 4 U. of Chi. L. Rev. 451, 464, or "the test is not whether the article is dangerous when carefully constructed, but whether it is likely to cause serious harm if carelessly made." Note, 13 Tex. L. Rev. 511, 515. It is clear that a product by product analysis of what is and what is not an inherently dangerous article cannot lead to the orderly exposition of the law, nor can it afford a basis

of guidance to manufacturers or litigants. Liability should be based upon what the article *is*, not on what it *would be if perfect*, in line with the general principle that negligence is failure to exercise due care according to the existing circumstances. See: Feezer, *Ibid.* 10 Minn. L. Rev. 1, 14, n. 32.

In substance, then, the test becomes: is the appliance as defectively made inherently dangerous when put to its intended use? This approach is not only founded in reason. See: Note, 2 Mo. L. Rev. 247, but is supported by precedent from other jurisdictions, *McLeod v. Linde Air Products Co.*, 318 Mo. 397, 1 S. W. (2d) 122; *Holland Furnace Co. v. Navracai*, 105 Ind. App. 574, 14 N. E. (2d) 339, as well as from Illinois.

█ Thus, the Supreme Court of Illinois in the *Rotche* case, *supra*, noted several cases, including the landmark case of *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, which held that one who places in trade and commerce a manufactured article, such as an automobile, which *is not inherently dangerous to life or limb but which may become so, because of its negligent construction*, is liable to one who sustains injury by reason of such negligent construction. And in the early case of *Davidson v. Montgomery Ward & Co., supra,* the court stated on page 369:

"We do not think it necessary that it should be established that the balance wheel was an instrumentality imminently dangerous in itself, but we think it sufficient to establish liability of appellant if the balance wheel in question was made of improper material, or improperly cast, resulting in such a porous and weakened condition *that when put to the use for which it was bought and sold it was imminently perilous . . .* It was intended to be revolved at a high rate of speed on a wood saw, around which men are necessarily engaged when it is in operation, and who cannot be pro-

tected by any known appliance against the frightful results which follow an explosion of a balance wheel . . .'' On page 371:

*"In the case at bar, the balance wheel was not in itself imminently dangerous, except when revolving rapidly and serving the very purpose for which it was sold."* (italics supplied)

██ Applying this test to the refrigerator in the case at bar, we cannot hold, as a matter of law, that a mechanism so designed and constructed as to, or which in ordinary operation does, give off deadly carbon monoxide gas is not an inherently dangerous instrumentality. We hold that in this regard the complaint stated a cause of action against the defendant Servel Incorporated.

██ Defendant Servel Incorporated, however, contends that the plaintiffs were not members of the class to which the manufacturer's liability, if any, ran, in that since plaintiffs were second-hand purchasers of the machine in question, that plaintiffs have no right to recover against it even assuming its liability exists to an orginal purchaser. With this contention we cannot agree. The refrigerator in question was a durable product, made to last, a fact of common knowledge, as is the fact that such appliances are often sold second hand and continue to give years of useful, safe service to their purchasers, which facts defendant Servel Incorporated, could reasonably foresee. In *Quackenbush v. Ford Motor Co.,* 167 App. Div. 433, 153 N. Y. Supp. 131, the second-hand purchaser of an automobile was allowed to recover damages against the manufacturer whom the evidence showed to have used defective materials and assemblies which caused the car to leave the road.

In defining the class of persons to whom the manufacturer's duty runs the courts of this State have used varying expressions. *Shepard v. Kensington Steel*

*Company,* 262 Ill. App. 117 (the vendee and those who use the article with the permission or consent of the vendee); *Lindroth v. Walgreen Co., supra,* (citing *Wintersteen v. National Cooperage Co.,* 361 Ill. 95;) (it extends to remote and unknown persons); *Davidson v. Montgomery Ward & Co., supra,* (any person who suffers injury therefrom).

 We adopt the rule and hold that a manufacturer who makes an inherently dangerous article is liable for bodily harm caused by such article to those whom he should expect to use the chattel or to be in the vicinity of its probable use. See: Restatement of the Law of Torts, Sec. 388, Comment (a).

Finally, the defendant contends that use of a manufactured product over a long period of time indicates as a matter of law that it is of proper design and construction. In support of its contention defendant cites several cases. *Dillingham v. Chevrolet Motor Co.,* 17 F. Supp. 615; *Lynch v. International Harvester Co.,* 60 F. (2d) 223; *Osheroff v. Rhodes-Burford Co.,* 203 Ky. 408, 262 S. W. 583; and *Bensinger Outfitting Co., v. Seaman's Adm'r,* 213 Ky. 157, 280 S. W. 941. Those cases may be distinguished from the case at bar. Here, accepting as we must on this motion to dismiss, the plaintiffs' allegations as true, the restricted opening for the air supply became more dangerous with each moment of use, as carbon particles were deposited thereon and the air supply was further restricted and the output of carbon monoxide increased. Accepting plaintiffs' allegations as true, this was not a case, as in the *Dillingham* case, *supra,* where if the machine had been defective it could not have run at all, or a case where the injury is properly attributable to the gradual decrease in strength and usefulness of the article after 5 years of service as in the *Lynch* case, *supra.*

It appears from the face of the complaint, as amended, that plaintiffs possessed the refrigerator in

question for approximately seven months. It is generally conceded that when there has been a substantial lapse of time, the subsequent appearance of the defect is easily explained, since no one imputed negligence to the maker of the one horse shay when it finally broke down. See: Note, 4 U. of Chicago L. Rev., 461, 464. The exact interval of time which will be conclusive as a matter of law we are not called upon to decide in this case. We may note that in at least one case seven years lapse between the time of purchase and appearance of the defect was held not to destroy the possibility of proving the manufacturer's negligence. *Reed & Barton Co. v. Maas* (C. C. A. 1st), 73 F. (2d) 359. As the court in the case of *Lill v. Murphy Door Bed Co.*, 290 Ill. App. 329, noted, on page 342:

"The length of time before the defect in the construction became known would not, in our opinion, preclude the plaintiff from her right to recover damages for the injuries sustained, because when the accident did occur it was the result of the negligence of the defendant in failing to properly test said bed before its sale and discover the defective casting."

The nature of the alleged defect in this particular refrigerator was not that the machine wore out gradually. It was that with each moment of use the refrigerator became increasingly dangerous, as the carbon particles restricted the air supply to the burning flame and increased the generation of carbon monoxide gas, by reason of defective construction of the machine. In this light the period of satisfactory service before the defect caused harm does not indicate the machine was not defective as a matter of law, but merely that the defect was more insidious than sudden in its capability to cause harm.

On this motion to dismiss, we have necessarily accepted the facts pleaded by the plaintiffs as true. We express no opinion as to what the evidence may or may

not show. The burden of proving the allegations in the complaint rests upon the plaintiffs. For the reasons above set forth the judgment dismissing plaintiffs' amended complaint is reversed and the cause is remanded for further action not inconsistent with this opinion.

Judgment dismissing complaint as to defendant-appellee, Servel Incorporated, reversed.

*Cause remanded with instructions.*