## AMERICAN OPTICAL COMPANY, U. S. Safety Service Company and Warner Lambert Co., Appellants (Defendants Below),

v.

## Chris M. WEIDENHAMER, Appellee (Plaintiff Below),

## and International Harvester Company, Appellee (Defendant Below).

No. 2–1276A462.

Court of Appeals of Indiana, Fourth District.

April 23, 1980.

Rehearing Denied Aug. 4, 1980.

John M. Clifton, Jr., Barrett, Barrett & McNagny, Fort Wayne, for appellants American Optical Co. and Warner Lambert Co.

Carl J. Suedhoff, Jr., Hunt, Suedhoff, Borror, Eilbacher & Lee, Fort Wayne, for appellant U. S. Safety Service Co.

Stephen L. Williams, Sherrill Wm. Colvin, Snouffer, Haller & Colvin, Fort Wayne, for appellee Chris M. Weidenhamer.

Milford M. Miller, Fort Wayne, for appellee International Harvester Co.

MILLER, Presiding Judge.

Plaintiff-appellee Chris M. Weidenhamer, a lathe operator employed at International Harvester (Harvester) was injured when an object struck his safety glasses, causing the right lens to shatter. He brought an action against the Defendants-Appellants American Optical Company, a division of Warner Lambert Company (American Optical) and U.S. Safety Service Company (U.S. Safety) alleging one or the other manufactured the alleged defective lens. His complaint was based on negligence, breach of implied warranty of merchantability and fitness for a particular purpose, breach of express warranty and strict liability in tort. Harvester was joined as a defendant but was granted a directed verdict at the close of Weidenhamer's evidence pursuant to Indiana Rules of Procedure, Trial Rule 50. The correct-

ness of granting Harvester's motion is not challenged and is not an issue in this appeal. The cause was submitted to the jury on all four theories of recovery and a general verdict returned against both American Optical and U.S. Safety in the amount of $57,724.41.

We affirm the jury verdict as to American Optical but reverse as to U.S. Safety and direct the trial court to enter judgment in U.S. Safety's favor.

American Optical claims numerous alleged errors were committed involving the sufficiency of the evidence and the giving and refusal of instructions. U.S. Safety also raises numerous alleged errors but, since we agree the trial court erroneously denied its motion for judgment on the evidence at the close of all the evidence, we need not discuss its other alleged errors.

On September 26, 1972 Weidenhamer, while wearing his safety glasses, was operating a lathe as a routine part of his job at Harvester when something struck his safety glasses causing his right lens to shatter. Glass cut through his right upper eyelid and also cut his cornea and iris.

There were no eyewitnesses to the accident; Weidenhamer did not know how it occurred or what struck him in the eye. Weidenhamer testified he was performing his job correctly and was unaware of any malfunction in the lathe. However, a document entitled "Agreement Between Employee and Employer as to Compensation" filed with the Industrial Board of Indiana was introduced into evidence by Harvester. The document, which was signed by Weidenhamer on October 13, 1972, stated the accident occurred because Weidenhamer "positioned a differential carrier in a lathe with a hoist. As he reached to engage the chuck, he hit the spindle jog button causing the spindle to revolve which in turn jerked the hoist hook loose. The hook struck him in the right eye." This information was taken from the "Supervisor's Accident Report" which was filled out immediately after the accident and signed by Darrell Thompson, Weidenhamer's foreman. Since he was not an eyewitness to the accident,

Thompson's report and testimony were based upon his reconstruction of the accident, his experience and training. According to Thompson, the accident must have occurred because Weidenhamer erroneously left the hoist attached to the part being machined when he turned on the machine and started its rotation. Weidenhamer, on the other hand, insisted he operated the lathe correctly and demonstrated such operation for the jury. He claimed it was impossible for the accident to have occurred in the manner described by Thompson. Weidenhamer also stated he had not filled out the form and was unaware of its contents when he signed it. He also indicated he was still wearing his eye patch when he signed the paper at Harvester's request approximately two weeks after the accident.

Certain Harvester employees, including Weidenhamer, were required to wear safety glasses on the job. The standard metal frame and replacement lenses were provided free, with a small charge if plastic frames were preferred. The safety glasses were furnished by American Optical and U.S. Safety to the safety bin at Harvester where they were distributed to the employees. The glasses were initially distributed with, of course, frames and lenses of the same manufacturer. However, the lenses from the two companies were interchangeable so if an employee came in with scratched or pitted lenses it was possible that the clerk in the safety bin would replace them with lenses from either company. Consequently, an employee who had changed the original lenses might have American Optical frames with U.S. Safety lenses and vice versa. Harvester bought most of its frames from American Optical and most of its replacement lenses from U.S. Safety.

Immediately after the accident, Thompson discovered both the frames of Weidenhamer's safety glasses with the left lens intact and several pieces of broken glass from the right lens on the ground near the place where Weidenhamer was working. Several more pieces of glass were found near the scene by Alvin Berry, a safety committeeman. All of these items were delivered to the safety department, however, when later requested for examination, they could not be located and were unavailable at the time of the trial. Therefore, none of the parties had physical evidence from which they could determine the manufacturer of the glasses.[1] There was no evidence that any of the parties to this appeal were responsible for the unavailability of the glasses.

Weidenhamer testified that during his employment from 1969 to the date of the accident he believed he had purchased four or five pairs of safety glasses with black frames. He also acknowledged that he had, on occasion, replaced the lenses in these glasses. However, both in his deposition prior to trial and at trial, he stated he remembered the frames he was wearing had "AO", the insignia used by American Optical, on the top corner of each side of his frames and, moreover, he had not replaced the lenses on the glasses he was wearing at the time of the accident.

An expert witness for American Optical, Neil Brant, testified that safety glasses contain glass lenses which meet certain geometric requirements, that is, the thickness was plano (flat) thickness between 3.0 and 3.8 millimeters. Also their impact resistance was approved by a heat treating process and they passed a drop ball test which involved dropping a one inch in diameter steel ball on the lens from a height of 50 inches. These were the standards accepted by the glass industry and by the Occupational Safety and Health Act (OSHA). He added American Optical, before distribution, tested all its lenses in order to determine if they met the foregoing standards. Brant examined a fragment of glass taken from Weidenhamer's eye and concluded the lens from which the fragment was taken had received a proper heat treating proce-

1. Fragments too small to identify the manufacturer were recovered from Weidenhamer's eye and tested for quality as hereinafter discussed.

dure. He stated the fragment was pitted and scratched and, in his opinion, the scratches existed prior to the accident. However, there was conflicting testimony by Weidenhamer that his glasses were neither scratched nor pitted and Weidenhamer's expert asserted that a scratch sufficient to reduce the impact resistance of the lens would have been visible to Weidenhamer. There was no testimony that the fragments had been properly cared for in the interval between the removal from Weidenhamer's eye and the examination by Brant. Finally, Brant opined that if the accident had occurred in the manner described in Thompson's report, no safety glasses would withstand the impact and any glasses made to withstand such impact would distort vision and/or be so heavy they would be impractical to wear.

Mr. Cobble, the safety bin clerk, verified that each pair of U.S. Safety and American Optical frames delivered to Harvester had what might have been a warning[2] attached to the frames, but which he had never read. U.S. Safety's warning was on the temple and American Optical's on the nosepiece. He stated he removed both warnings in order to fit the glasses and therefore, to his knowledge, no employees had ever seen the warnings. Berry, the Safety Committeeman, testified that in the 30 years he had worked at Harvester he had never been aware of a warning attached to the glasses or in a brochure.

Weidenhamer stated he was unaware of any warning and it was his belief that the safety glasses were unbreakable and able to withstand virtually any pressure. In fact he was aware of an accident where a piece of metal was embedded in an employee's lens and the glasses did not break.

*U.S. Safety's Motion For Judgment On The Evidence*

At the close of all the evidence, U.S. Safety moved for a judgment on the evi-

dence pursuant to Ind. Rules of Procedure, Trial Rule 50(A)(3), basing its motion on the allegation that there was no evidence submitted by plaintiff which indicated it had manufactured the safety glasses in question. The motion was overruled by the Trial Court. We believe the trial court erred in this regard.

T.R. 50(A)(3) provides:

### "JUDGMENT ON THE EVIDENCE (DIRECTED VERDICT)

(A) *Judgment on the evidence—How raised—Effect.* Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence:

. . . . .

(3) After all the evidence in the case has been presented and before judgment;"

In *Palace Bar, Inc. v. Fearnot,* (1978) Ind., 381 N.E.2d 858, 861, our Supreme Court stated an issue should be withdrawn from the jury and judgment on the evidence in favor of the defendant should be entered:

"[when] there is a total absence of evidence or reasonable inferences on at least one essential element of the plaintiff's case. Such a judgment is proper when the evidence is without conflict and is susceptible to but one inference and that inference is in favor of the defendants. *Allied Fidelity Ins. Co. v. Lamb,* (1977) Ind.App., 361 N.E.2d 174; *Mamula v. Ford Motor Co.,* (1971) 150 Ind.App. 179,

---

**2.** Evidence disclosed that U.S. Safety's warning read:

CAUTION

These lenses are impact resistant but are NOT unbreakable. Clean and inspect fre-

quently. Pitted or scratched lenses reduce vision and seriously reduce protection—replace immediately.

American Optical's warning is discussed later in this opinion.

275 N.E.2d 849. Furthermore, plaintiff's burden requires that she present evidence of probative value, based on the facts, or inferences to be drawn from the facts. Her burden may not be carried with evidence based merely upon supposition or speculation. An inference cannot arise or stand by itself. There must first be a fact established from which an inference arises. *Prudential Insurance Co. v. Van-Wey*, (1945) 223 Ind. 198, 204, 59 N.E.2d 721, 725."

The Court, after concluding the trial court erred in overruling Palace Bar's motion for judgment on the evidence, remanded with instructions to enter judgment in Palace Bar's favor.

In *McKeown v. Calusa*, (1977) Ind. App., 359 N.E.2d 550, 553, where the evidence was circumstantial, this Court held there must be "some evidence of probative value (i. e., carrying the quality of proof and having fitness to induce conviction) upon each element of the claim" in order for a trial court to deny a motion for a directed verdict and concluded:

"If the ultimate fact in question [arises] as a reasonable inference from the circumstantial evidence, a TR 50 motion should be denied. Conversely, if the circumstantial evidence fails to create a reasonable inference of the ultimate fact, but merely leaves the possibility of its existence open for surmise, conjecture or speculation, then there is no evidence of probative value as to that ultimate fact, and the motion may be granted. As Judge Buchanan stated in *Mamula*, the trick is to tell the difference, and the answer depends upon the facts and circumstances of a given case."

Here, Weidenhamer charged U.S. Safety with negligence, breach of express warranty, breach of implied warranty and strict liability in tort. It is axiomatic that in order to impose liability upon a defendant under any of the foregoing theories the plaintiff must prove the defendant sold, manufactured or put into the stream of commerce the product which caused the plaintiff's harm. *Ayr-Way Stores, Inc. v.*

*Chitwood*, (1973) 261 Ind. 86, 300 N.E.2d 335 (strict liability in tort); *Perfection Paint & Color Co. v. Konduris*, (1970) 147 Ind.App. 106, 258 N.E.2d 681 (strict liability in tort); *Baker v. Coca Cola Bottling Works*, (1961) 132 Ind.App. 390, 177 N.E.2d 759 (negligence action); 51 A.L.R.3d 1344 (1973 and Supp.1979) (on any theory).

An examination of the evidence in the record before us discloses an absence of physical evidence indicating whose safety glasses were being worn by Weidenhamer at the time of the accident. However, Weidenhamer testified on several occasions that he was wearing American Optical frames when the accident occurred and had not exchanged lenses for those particular frames. His testimony revealed he had so testified during his pre-trial depositions. Evidence was presented showing Weidenhamer's purchase of three frames from the safety bin. However, the records of the safety bin were admittedly incomplete and not accurate. In addition, there was no record kept of replacement lenses which were supplied without cost to employees. Under vigorous cross-examination, which among other things brought out the fact that Weidenhamer had replaced lenses for some of the frames which he had purchased, Weidenhamer remained firm in his assertion that he was wearing American Optical frames and lenses when he was injured.

It is an established rule of evidence in this jurisdiction that a party is bound by his own testimony which is favorable to his adversary unless such testimony is later withdrawn, explained or modified. *State v. Tolliver*, (1965) 246 Ind. 319, 205 N.E.2d 672; *New York Central Railroad Company v. Wyatt*, (1962) 135 Ind.App. 205, 184 N.E.2d 657, trans. den. (1962), 244 Ind. 373, 193 N.E.2d 63; *Gramar Investment Co. v. Cumberworth*, (1950) 120 Ind.App. 379, 92 N.E.2d 736; 13 I.L.E. *Evidence* § 329. The applicable rule is stated thusly in 30 Am. Jur.2d *Evidence* § 1087 (1967):

"It has frequently been stated in broad general terms that a party is bound or concluded by his own testimony which is favorable to the adverse party, unless

such testimony is later withdrawn, explained, or modified. In particular, the view has been taken in a number of cases that if a party, in his testimony, makes a material statement of fact negativing his right of action or defense, and no testimony more favorable appears to contradict or modify it, he is bound by it, regardless of its credibility, and his opponent is entitled to hold him to it and even to demand a verdict or finding accordingly as a matter of law. It has commonly been held that if a party testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as an informal judicial admission, at least insofar as the fact is peculiarly within his own knowledge."

The testimony of Weidenhamer was clear and unequivocal, and related to facts particularly within his own knowledge. Further, it was uncontroverted by other evidence or testimony. He should, therefore, be bound by his own testimony as to this issue. We conclude the jury, in finding against U.S. Safety, must have resorted to "supposition or speculation." *Palace Bar, Inc. v. Fearnot, supra* at 861. There was no evidence from which they could reasonably infer that somehow, without the knowledge of Weidenhamer, American Optical lenses had been replaced with U.S. Safety lenses.

By reason of the foregoing, U.S. Safety's Motion for Judgment on the Evidence should have been granted because of the lack of evidence or reasonable inferences from which the jury could have concluded U.S. Safety had manufactured the glasses in question. *Palace Bar, Inc. v. Fearnot,*
*supra.* We reverse as to U.S. Safety with instructions to enter judgment in its favor. *Palace Bar, Inc. v. Fearnot, supra*; *Louisville, N. A. & C. Ry. Co. v. Treadway,* (1895) 142 Ind. 475, 40 N.E. 807, *reh. den.* (1895), 143 Ind. 689, 41 N.E. 794, (where cause was reversed as to one alleged tortfeasor with instructions to enter judgment in its favor and affirmed as to the other defendant). *See State v. Halladay,* (1978) Ind.App., 374 N.E.2d 51; *Fishel v. Pinckard,* (1923) 80 Ind.App. 544, 141 N.E. 615.

*Sufficiency of Evidence Against American Optical*

American Optical assails the verdict of the jury claiming (a) the evidence failed to show it manufactured the glasses which caused Weidenhamer's injury and (b) the evidence did not support a violation of Restatement (Second) of Torts, § 402A, (1965)[3] [hereinafter cited as 402A] in that the evidence did not show the glasses were defective either when it put them into the stream of commerce or when Weidenhamer was injured and, further, the evidence failed to show its warning was inadequate.

In evaluating this sufficiency challenge we must adhere to our standard of appellate review. We will not weigh the evidence but will consider only that evidence most favorable to the appellee to determine if there is substantial evidence of probative value or reasonable and logical inferences drawn therefrom to sustain the decision of the trial court. Reversal of the trial court's judgment will result only if the evidence and logical inferences therefrom are undisputed and could only lead to a verdict opposite to the one reached by the jury. *Palmer v. Decker,* (1970) 253 Ind. 593, 255 N.E.2d 797; *State v. Thompson,* (1979) Ind.App., 385 N.E.2d 198; *Shipley v. City of South Bend,* (1978) Ind.App., 372 N.E.2d 490.

3. "402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer.*
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

(a) *Proof of Manufacture of Lens.*

■ American Optical does not suggest there was a lack of proof it supplied frames and lenses to Harvester which, in turn, were delivered to Harvester's employees. Its claim that Weidenhamer failed to prove it manufactured the lens is based on the proposition that the evidence failed to prove *which* manufacturer, American Optical or U.S. Safety, supplied the lens. As noted earlier in this opinion, Weidenhamer identified the frames worn at the time of the accident as those of American Optical and, further, denied replacing American Optical's original lenses. This was ample evidence identifying the shattered lens and was clearly sufficient to support the jury's verdict.

(b) *Proof of Strict Liability Under 402A.*

■ For a plaintiff to establish a products liability claim under 402A he must prove:

"(1) that he was injured by the product, (2) because it was defective and unreasonably dangerous, (3) that the defect existed at the time the product left the hands of the defendant, and (4) the product was expected to and did reach the consumer without substantial change in its condition."

*Gilbert v. Stone City Construction Co., Inc.,* (1976) Ind.App., 357 N.E.2d 738, 743, (citing W. Prosser, Law of Torts, § 103 (4th Ed. 1971)).

Initially, American Optical does not dispute that glass fragments from the broken lens injured Weidenhamer's eye, thus satisfying the first requirement under 402A. Further, we deem there was substantial evidence to establish the remaining requirements and enable the jury to find for Weidenhamer despite American Optical's claim that its product was not defective and it gave an adequate warning. We base this conclusion, after a review of the evidence, on our determination that the warning itself, if in fact one was given, was the defect in the product.

■ In determining whether a defect existed we note there are three types of unreasonably dangerous product defects as enumerated in *Burton v. L. O. Smith Foundry Products,* (7th Cir. 1976), 529 F.2d 108, where the court, applying Indiana law, held a product could be defective because of manufacturing flaws, design defects or *failure to adequately warn of potential dangers.* Recently, this Court said a product which is flawless in design and manufacture may be rendered defective within the meaning of 402A *if unaccompanied by proper warnings. Ortho Pharmaceutical Corp. v. Chapman,* (1979) Ind.App., 388 N.E.2d 541. Such failure to provide an adequate warning was discussed in *Nissen Trampoline Co. v. Terre Haute First National Bank,* (1975) Ind.App., 332 N.E.2d 820, 825, *rev'd on other grounds* (1976), 265 Ind. 457, 358 N.E.2d 974, as follows:

"Under the doctrine of strict tort liability as expressed in Restatement (2d) Torts, § 402A, and adopted in Indiana, *Ayr-Way Stores, Inc. v. Chitwood,* (1973) [261] Ind. [86] 300 N.E.2d 335; *Perfection Paint v. Konduris,* (1970) 147 Ind.App. 106, 258 N.E.2d 681; *Cornette v. Searjeant Metal Products, Inc.* (1970), 147 Ind. App. 46, 258 N.E.2d 652; it is well established that a product, although virtually faultless in design, material, and workmanship, may nevertheless be deemed defective so as to impose liability upon the manufacturer for physical harm resulting from its use, where the manufacturer fails to discharge a duty to warn or instruct with respect to potential dangers in the use of the product. See generally, 53 A.L.R.3d 239; *Filler v. Rayex Corp.,* (7th Cir. 1970), 435 F.2d 336 (applying Indiana law); *Sills v. Massey-Ferguson, Inc.,* (N.D.Ind.1969), 296 F.Supp. 776. Generally, the duty to warn arises where the supplier knows or should have known of the danger involved in the use of its product, or where it is unreasonably dangerous to place the product in the hands of a user without a suitable warning. However, where the danger or potentiality of danger is known or should be known to the user, the duty does not attach. *Posey v. Clark Equipment Co.,* (7th Cir.

1969), 409 F.2d 560, *cert. denied*, 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242; *Garrett v. Nissen Corp.*, (1972), 84 N.M. 16, 498 P.2d 1359."

Further, in *Gilbert v. Stone City Construction Co., supra*, at 743, this Court quoted W. Prosser, *supra* at § 99, and established as law in Indiana the proposition that an article is defective if it is not as safe as the ordinary consumer reasonably expects it to be. Finally, whether a product is dangerously defective is a question for the jury. *Dias v. Daisy Heddon*, (1979) Ind.App., 390 N.E.2d 222; *Gilbert v. Stone City Construction Co., supra.*

■ If the jury determines there is a great risk of harm, it could find that "any warning less than the 'best' or 'most effective' is not reasonable under the circumstances." *Ortho Pharmaceutical Corp. v. Chapman, supra* at 552. In *Ortho*, Judge Young writing for this Court quoted *Spruill v. Boyle-Midway, Inc.*, (4th Cir. 1965) 308 F.2d 79, 85 in order to define an "adequate" warning as follows:

> If warning of the danger is given and this warning is of a character reasonably calculated to bring home to the reasonably prudent person the nature and extent of the danger, it is sufficient to shift the risk of harm from the manufacturer to the user. To be of such character the warning must embody two characteristics: first, it must be in such form that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use; secondly, the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person.

*Ortho v. Pharmaceutical Corp. v. Chapman, supra* at 552.

Judge Young also quoted *Bituminous Casualty Corp. v. Black and Decker Manufacturing Co.*, (1974) Tex.Civ.App., 518 S.W.2d 868, 872–73 on warning as follows:

> "(1) [I]t must be in such *form* that it could reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use;
>
> (2) the *content* of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person. . . . The question of whether or not a given warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product. Implicit in the duty to warn is the duty to warn with a degree of *intensity* that would cause a reasonable man to exercise . . . the caution commensurate with the potential danger. . . . A clear cautionary statement setting forth the exact nature of the dangers involved would be necessary to fully protect the seller. . . . " (Emphasis added).

*Ortho Pharmaceutical Corp. v. Chapman, supra* at 552. Thus, this Court concluded:

> "[A] warning may be inadequate in factual content, inadequate in expression of facts or inadequate in the method by which it is conveyed."

*Id.*

Any ambiguity in the language should be construed against the person who authorized the warning. 63 Am.Jur.2d *Products Liability* § 53 (1972).

■ There is a particular need for an effective warning when the manufacturer has made a representation of safety because, having been assured a product is safe, people are less likely to watch for potential danger. L. Frumer & M. Friedman, *Products Liability* § 8.05[2] (1979) [hereinafter cited as Products Liability,] citing *inter alia Tingey v. E. F. Houghton*, (1947) 30 Cal.2d 97, 179 P.2d 807; *Love v. Wolf*, (1964) 226 Cal.App.2d 378, 38 Cal. Rptr. 183; *Crist v. Art Metal Works*, (1930) 230 App.Div. 114, 243 N.Y.S. 496, *aff'd* (1931) 255 N.Y. 624, 175 N.E. 341; *Henry v. Crook*, (1922) 202 App.Div. 19, 195 N.Y.S. 642; *Rosenbusch v. Ambrosia Milk Corp.*, (1917) 181 App.Div. 97, 168 N.Y.S. 505; Re-

statement (Second) of Torts § 388, Comment b. (Liability is imposed upon a supplier in Comment b "if by word or deed he leads those who are to use the chattle to believe it to be of such a character or condition safer for use than he knows it to be or to be likely to be.")

This principle was applied in *Maize v. Atlantic Refining Co.*, (1945) 352 Pa. 51, 41 A.2d 850, where the words "Safety-Kleen" were conspicuously displayed on all four sides of a can of carbon tetrachloride, a cleaning solvent. The word "caution" was in much smaller letters about one fourth inch in size followed by even smaller printing which stated "Do not inhale fumes, use only in well ventilated places". The court held the word "Safety-Kleen" would "naturally lull the user of that fluid so-called into a false sense of security". *Id.* 41 A.2d at 852; and determined the conspicuousness of the word "safety" made the warning of comparatively minor significance. *Id.*

Returning to the case before us, introduced into evidence was a box representative of those in which American Optical safety glasses were supplied to Harvester. We reproduce here, in actual size, the front and one side of the box (the same information appeared on the back and remaining side):

American Optical alleges the warning attached to the nosepiece of the glasses (American Optical's Exhibit D) contained the following language (not actual size):

"CAUTION

These Super Armorplate® lenses are impact resistant but are NOT unbreakable. Clean and inspect lenses frequently.

Pitted or scratched lenses reduce vision and seriously reduces [sic] protection. Replace immediately. Meets ANSI Z87. 1–1968 363B."

The size of the letters on this warning is dramatically smaller than that of the letters appearing on the box. The capital letters are approximately ¹⁄₁₆ inch in height and the other letters approximately ¹⁄₃₂ inch in height. The entire warning allegedly attached to the nosepiece was compressed into a circular area one inch in diameter.

American Optical insists throughout its brief that the evidence clearly indicated the warning was attached to the nosepiece of the glasses. However, we have carefully considered and reviewed the record and find American Optical's claim to be inaccurate. We are directed by American Optical to testimony allegedly establishing without question the existence of the warning on the glasses furnished Weidenhamer. The testimony is that of Cobble, the employee in charge of the safety bin and reads:

"Q. Now, Mr. Cobble, you also remarked this morning on direct examination in response to a question by Mr. Colvin that *there were certain paper or attachments that you received with the glasses*, I will hand you what has been marked as Defendant's Exhibit D, or American Optical's Exhibit D and ask you if you have seen that Exhibit over the noseguard of lenses that you received from American Optical back in 1972?

A. Yes, sir, I have seen that on them for a long, long time, I don't remember just how long, *but you know I have never read one of those.*

Q. But you did receive these on all American Optical Safety glasses?

A. These were wrapped right around here and stuck together.

Q. In other words when you pulled it out of the box that was right on them?

A. Right on the nosepiece.

MR. CLIFTON: At this time, Your Honor, Defendant moves the admission of Defendant American Optical's Exhibits D and E [the box].

MR. COLVIN: We would like to ask a couple of preliminary questions.

COURT: Very well.

MR. COLVIN: Q. Mr. Cobble, do you have any idea where this Exhibit B [sic] came from, this little tab here?

A. No, I wouldn't have any idea. *I do know that there was a tab similar to that, or it looked like that, on every pair of American Optical glasses that I received, Sir, I do know that there was a tab, a round tab that wraps around the nosepiece at the bridge of the*

Q. *I was asking if you knew where this one came from?*

A. *I don't know where that particular one came from.*

Q. *Did you ever read this?*

A. *No, I never read it, a gentleman showed it to me but I never read it, but I never read it.*" (Emphasis added).

Contrary to American Optical's allegations, the evidence was not without conflict regarding whether a warning accompanied the lenses and glasses in question. American Optical attempted, at trial in 1976, to establish the existence and form and content of the warning accompanying the glasses by introduction of its Exhibit D. It failed in this respect. Cobble was unable to identify Exhibit D either as a warning or as *the* warning which was supplied in 1972. Weidenhamer testified that he had never seen a warning. Cobble and Berry, the safety committeemen, indicated they were not aware of any warning. Taking all this pertinent evidence into consideration, we find the jury would have been justified in finding the absence of a warning or in concluding there was serious doubt as to the content thereof.

Even assuming arguendo the alleged warning did in fact accompany the glasses, we find the evidence sufficient to have permitted the jury to conclude such warning did not pass muster in its form, that is, the warning could not "reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use". *Bituminous Casualty Corp. v. Black & Decker Manufacturing Co., supra,* at 872, quoted in *Ortho Pharmaceutical Corp. v. Chapman, supra* at 552. Prominently displayed on the box in which the glasses were delivered were the words, "Safety Glasses", "SURE–GUARD", and "Your *Surest* Protection". As in *Maize v. Atlantic Refining Company, supra,* such language would naturally, "lull the user . . . into a false sense of security". The word "safety" is defined as the condition of being safe, that is, "freed from harm, injury or risk". Webster's Third New International Dictionary 1998 (1976).[4] To "guard" is defined as to defend against injury, *id.* at 1007, and the word "sure", among other things, defined as "unfailing in character or condition". *Id.* at 2299. Further, the word "sure" is synonymous and often interchangeable with "certain". *Id.* The word "surest", of course, is the superlative of "sure" and therefore denotes "an unsurpassed or extreme level of the quality, quantity, or relation" expressed by the word sure. *Id.* at 2294. In view of the foregoing we can come to no other conclusion but that the representations of American Optical would have conveyed a strong impression to the ultimate consumer, here Weidenhamer, that the glasses in question offered the highest degree of, or even ultimate, protection. In order to offset this impression we are confronted with an alleged warning miniscule in size and so inconspicuous that neither the employee of

---

4. "Safety glass", a term which a user might associate with Safety Glasses, is defined as follows:

1: LAMINATED GLASS 2: *glass that is strengthened by tempering and that when* struck breaks into relatively harmless granules rather than large jagged pieces 3: WIRE GLASS". (Emphasis added)

Webster's Third New International Dictionary 1998 (1976).

nine years in the safety bin (Cobble) nor the thirty year employee and safety committeeman (Berry) were even aware the glasses were accompanied by a warning. Thus, there was ample evidence permitting the jury to determine the warning to be of very minor significance when compared with the representations of sure and certain protection and, therefore, inadequate in form.

Additionally, we find questionable whether the content of the warning, arguably supplied, was sufficient to convey a fair idea of the nature and extent of the danger to the reasonably prudent user. Again, the language contained in the alleged warning was: "These Super Armorplate® lenses are impact resistant but are NOT unbreakable. Clean and inspect lenses frequently. Pitted or scratched lenses reduce vision and seriously reduces [sic] protection. Replace immediately". We first note the obvious, that the language did not inform the user the lenses would shatter into jagged pieces. Next, the copyrighted designation of the lenses as "Super Armorplate" suggests that the lenses had the strength and offered the protection of metal armor. Further, the comment that the lenses were not unbreakable was followed with a direction to clean and inspect them frequently and "[p]itted or scratched lenses . . . reduces [sic] protection. Replace immediately." We feel a reasonably prudent user of the glasses could infer from this language that the lenses might break if pitted or scratched but were unbreakable absent such infirmities. The evidence was conflicting in this regard, but Weidenhamer testified with certainty that the lenses were not pitted or scratched. The failure to inform that the lenses were not shatterproof and the other inferences noted above could have enabled the jury to conclude the content of the warning was inadequate.

▇ Finally, although not cogently argued or presented in its brief, American Optical seemingly maintains the evidence under 402A is insufficient to show the glasses were defective at the time they were delivered to Harvester and to show that they reached Weidenhamer without substantial change. Apparently, its contention is that the glasses arrived at Harvester with an adequate warning which Cobble removed and that such removal insulated it from liability. We have already decided the evidence was sufficient for the jury to have concluded such warning was inadequate or non-existent. Therefore there was sufficient evidence to permit the jury to conclude the glasses were defective when they left American Optical. The remaining question to be answered is whether Harvester's action in removing the ineffective warning caused a substantial change in the condition of the glasses. American Optical does not cite any case where the removal of an inadequate warning was found to cause such substantial change. However, we believe *Spruill v. Boyle-Midway, Inc., supra,* presents an analogous situation. In that case a fourteen-month-old child died as a result of hydrocarbon pneumonia induced by the ingestion of a small amount of furniture polish manufactured by the defendant. The mother of the child had not read the warning. The United States Court of Appeals, Fourth District, found the jury could reasonably have concluded the warning was inadequate and, in affirming the manufacturer's liability, stated:

"The short answer to this is that where the manufacturer is obligated to give an adequate warning of danger the giving of an inadequate warning is as complete a violation of its duty as would be the failure to give any warning. In this case had the warning been in a form calculated to attract the user's attention, due to its position, size, and the coloring of its lettering, and had the words used therein been reasonably calculated to convey a conception of the true nature of the danger, this mother might not have left the product in the presence of her child. Indeed, she might not have purchased the product at all, a fact of which the manufacturer appears to be aware. *Having deprived the mother of an adequate warning which might have prevented the injury, it cannot be permitted to rely upon a warning which was insufficient to prevent the injury.* This is the reasoning

behind the rule laid down by the courts of Virginia that, ' * * * [A]n insufficient warning is in legal effect no warning'. *Sadler v. Lynch*, 192 Va. 344, 347, 64 S.E.2d 664, 666 (1951); *McClanahan v. California Spray-Chemical Corp.*, [194 Va. 842, 75 S.E.2d 712 (1953)] *supra*. The jury in this case could reasonably find that the warning given was insufficient both in form and in content, and did, in fact, so find. The warning being insufficient, defendants cannot be permitted to take aid and comfort from it to any extent." (Emphasis added).

Where there is a reasonable basis for a jury to find the alleged warning to be inadequate or non-existent, we find a manufacturer or supplier cannot rely upon such defective warning, and its removal or destruction by a third party before reaching the ultimate consumer is of no consequence.

 In conclusion, we have carefully examined all of American Optical's -contentions and arguments relating to the alleged absence of evidence supporting Weidenhamer's theory of strict liability and find them unconvincing. We can, therefore, support the verdict on this issue and where, as here, the verdict is general, such verdict will stand if the evidence is deemed sufficient to sustain any theory of liability. *Ertel v. Radio Corp. of America*, (1976) 261 Ind. 573, 307 N.E.2d 471; *Devine v. Grace Construction and Supply Co.*, (1962) 243 Ind. 98, 181 N.E.2d 862. Consequently, it is unnecessary to explore further whether the verdict could also be sustained by sufficient evidence on the other three theories of the complaint.

*American Optical's Motions For Judgment on The Evidence.*

 American Optical made two motions for judgment on the evidence, one at the close of Weidenhamer's evidence and the other after all the evidence was heard. Any error in denying the initial motion was waived when American Optical proceeded with its case. *Ortho Pharmaceutical Corp. v. Chapman, supra. Meadowlark Farms, Inc. v. Warken*, (1978) Ind.App., 376 N.E.2d

122. Our conclusion that the evidence was sufficient on the strict liability theory disposes of American Optical's claim of error in denying its final motion. *Huff v. Traveler's Indemnity Co.*, (1970) 266 Ind. 414, 363 N.E.2d 985; *McKeown v. Calusa, supra*.

*The Propriety of the Verdict Against Both American Optical and U.S. Safety.*

 American Optical contends the trial court erred in accepting the jury verdict against both American Optical and U.S. Safety, claiming this verdict violated the specific direction of the trial court in its verdict form instruction which allegedly required a verdict against *either* American Optical and U. S. Safety but not against both. In support of its claim, American Optical again vigorously argues Weidenhamer failed to prove which defendant manufactured the product and asserts the verdict substantiates the jury's confusion in this regard. It claims, "the jury obviously could not determine who manufactured the lens worn by Chris Weidenhamer and decided to find against both American Optical and U. S. Safety Service."

The court gave the following instruction:
"If you find for the plaintiff on his complaint and against one or more of the defendants, but not all, the form of your verdict may be
If you find for the plaintiff on his complaint and against the following defendants (write here the names of the defendant or defendants that you find against) _____ (American Optical Company, a div (sic) of Warner Lambert Co., or U.S. Safety Service Co.) and assess plaintiff's damages in the sum of $_____."

Another instruction read in part:
"Forms of the verdict are sent with you for your convenience. You may adopt and use one of these forms, if it meets your requirements or you may prepare and use a form of your own."

The verdict as recorded in the order book read:
"We the jury, find for plaintiff and against the following defendant or de-

fendants (write here the names of the defendant or defendants that you find against—American Optical Company, a Division of Warner Lambert Company, or U.S. Safety Service Company) American Optical Co. Div. of Warner, Lambert and U.S. Safety Service and assess plaintiff's damages in the sum of $57,724.41. Signed: Thomas L. Garrett foreman".

We must reject American Optical's claim that the Court's instruction was a mandate to the jury to find for either American Optical or U.S. Safety, but not both. In three places the instruction referred to a possible verdict against more than one defendant. Arguably, it was ambiguous and possibly confusing but it did permit the jury to find against both defendants.

■ American Optical attacks the verdict for one other reason, that is, as being contrary to law[5] because Weidenhamer failed to prove which defendant manufactured the product. We have already resolved this issue against American Optical.

*Weidenhamer's Instruction Defining a Defect.*

American Optical objects to Weidenhamer's Instruction No. 3, which read:

"The word 'defect' as used in these instructions, refers not only to the condition of the product itself, but may include as well the failure to give directions or warnings as to the use of the product in order to prevent it from being unreasonably dangerous. If directions or warnings as to the use of a particular product are reasonably required in order to prevent the use of such product from becoming unreasonably dangerous, the failure to give such warnings or directions, if any, renders the product defective, as that word is used in these instructions.

So if you find from a consideration of all the evidence that Chris Weidenhamer was not given adequate directions or warnings as to the use of the safety glasses and lens he was wearing, then you may find that the safety glasses and lens he was wearing were defective."

It argues the instruction is objectionable for two reasons. First, it claims the language permitted the jury to infer *no warning* was given, whereas the evidence was "uncontradicted" that every pair of American Optical lenses and glasses was accompanied by a warning. Such evidence was not uncontradicted. This question has already been decided against American Optical.

■ The instruction is also challenged as incomplete in failing to inform the jury that a manufacturer can assume its warning will be read and heeded. In vain we have searched the lengthy trial objection of American Optical and are unable to discover this reason presented to the trial court. (Nor did it appear in the Motion to

---

**5.** We need not consider whether the verdict was so inconsistent as to render the judgment contrary to law. American Optical has cited no authority nor argued this proposition in its brief. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). But we note American Optical did not tender its own verdict form, object to the verdict form given or object to the verdict when rendered by the jury. Nor did it object to an instruction which made it permissive and not mandatory that the jury use the form given. Under these circumstances we believe American Optical waived any error as to the form of the verdict. In *McCague v. New York, Chicago & St. Louis Ry. Co.,* (1947) 225 Ind. 83, 71 N.E.2d 569, *reh. den.* (1947), 225 Ind. 107, 73 N.E.2d 48 the jury verdict granted plaintiff relief on only his first paragraph of complaint and not on the second. The court held any error was waived by the plaintiff's failure to tender an instruction permitting recovery on

both paragraphs. In *Murphy Auto Sales, Inc. v. Coomer,* (1953) 123 Ind.App. 709, 112 N.E.2d 589 the defendants claimed only one plaintiff was entitled to recovery and the verdict which named both plaintiffs was contrary to law. The court held defendants waived the issue by failing to object to the form of verdict given the jury and by not offering other forms of verdict in support of their theory, citing Rule 1–7, Rules of the Supreme Court of the State of Indiana, the predecessor of Ind. Rules of Procedure, Trial Rule 51, which then, as now, precluded a party from predicating error upon the giving of an instruction unless it objects thereto before the jury retires to consider its verdict. *See Coyle Chevrolet v. Carrier,* (1979) Ind.App., 397 N.E.2d 1283, (Petition for transfer pending); *Nicholson's Mobile Home Sales, Inc. v. Schramm,* (1975) 164 Ind.App. 598, 330 N.E.2d 785.

Correct Errors). Its claimed error now raised for the first time on appeal is waived. Indiana Rules of Procedure, Trial Rule 51(C). Certainly, the trial judge is entitled to have specific, meaningful objections to instructions before their submission to the jury. Otherwise he has no opportunity to reexamine his position and correct possible errors or misstatements. *Scott v. Krueger*, (1972) 151 Ind.App. 479, 280 N.E.2d 336; *Conley v. Lothamer*, (1971) 150 Ind.App. 356, 276 N.E.2d 602.

*Weidenhamer's Instruction Concerning Duty To Give Warning.*

Weidenhamer's Instruction No. 6 as modified provided:

"A manufacturer of goods has the duty to give to users reasonable warning of the dangers inherent or reasonably foreseeable in its manufactured goods. This duty applied even though the goods are not being used in the manner specified by the manufacturer, so long as such use is one that the manufacturer could reasonably foresee. Lambert Company and U.S. Safety Service Company, in this case, had the legal duty to reasonably warn of the dangers inherent in using the safety glasses and lenses, even if the Plaintiff, Chris Weidenhamer, used the product in a manner other than that specified by the manufacturer, so long as Plaintiff's use of the product was one that the manufacturer could reasonably foresee. However, where the danger or portentiality of danger is known or should be known to the user the duty does not attach."

American Optical claims this instruction is not supported by the evidence, again claiming there was no evidence it manufactured the glasses or failed to provide a warning. We have found these claims to be without merit.

*Weidenhamer's Instruction Concerning Strict Liability.*

Weidenhamer's Instruction No. 9 as modified read:

"I instruct you that it is the law in Indiana that one who sells any product in a defective condition unreasonably dangerous to the user or consumer is subject to liability for physical harm thereby caused to the ultimate user or consumer if

(a) The seller is engaged in the business of selling such a product and

(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

This rule is applicable although the seller has exercised all possible care in the preparation and sale of this product, and the user has not bought the product from or entered into any contractual relation with the seller.

In this case, if you find that the defendants, or any one of them, sold the safety glasses and lens which reached Chris Weidenhamer without substantial change in the condition in which they were sold, and if you further find the safety glasses and lens were in a defective condition unreasonably dangerous to Chris Weidenhamer, then you may find the defendants, or any one of them, are responsible for the physical harm proximately caused thereby."

Again, American Optical asserts there is no evidence indicating who manufactured the lens of a defect. We have already addressed these issues. There was no error here.

*Weidenhamer's Instruction Concerning Duty To Give Adequate Warning.*

Complaint is made of Weidenhamer's Instruction No. 10 which provided:

"You are instructed that the law imposes upon a manufacturer the duty to give full, fair and adequate warnings of dangers to be incurred in the use of the product when the manufacturer has represented the product as safe for use. If you find from all the evidence in this case that American Optical Company, Warner Lambert Company, or the U.S. Safety Service Company represented the safety glasses and lens as safe for use, you should then determine whether the De-

fendant's warning, if any, was full, fair and adequate to warn Chris Weidenhamer of the potential danger of injury."

American Optical argues the instruction was repetitious [6] and incomplete in omitting the fact that warnings were attached to the glasses when they arrived at Harvester.

Other than merely stating the instruction was repetitious and omitted a certain fact, American Optical presents no argument, cogent or otherwise, nor authority to show how the repetitious nature of the instruction rendered it improper or why the alleged omitted fact was a necessary element in the instruction. Any error based on these claims is waived for failure to present a cogent argument. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

Next, the failure to include the element of probable cause is alleged to be a ground for finding the instruction improper. All nonmandatory instructions must be considered together to determine whether the jury was properly instructed, *Palmer v. Decker*, (1970) 253 Ind. 593, 255 N.E.2d 797 and all applicable law need not be included in one instruction. *Kroger v. Haun*, (1978) Ind.App., 379 N.E.2d 1004. American Optical acknowledges this instruction is not mandatory. Upon reviewing all the instructions we conclude the jury was in fact instructed that Weidenhamer's injuries must have been proximately caused by American Optical in order for him to recover.[7]

Finally, American Optical alleges the instruction was not supported by the evidence, stating in its brief, "[t]here was absolutely not one scintilla of evidence in this cause of any oral or written representation" that the safety glasses were safe for use. We assume American Optical is arguing the following portion of its objection in the trial court:

"The Defendant objects and excepts to said instruction that it is not a statement of the law for in order to apply to the theory of express warranty as is intended by said instruction there must be affirmations or representations in evidence in this cause. There is no evidence whatsoever of any representation or affirmation under the Uniform Commercial Code in effect in Indiana being IC 26–1–2–313. Defendant further objects and excepts to the said instruction for said instruction leaves out the element of proximate cause."

Ind. Code 26–1–2–313, referred to in the objection, provides:

"(1) Express warranties by the seller are created as follows:

(a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise

(b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description

(c) any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

---

**6.** We note some repetition is bound to occur in instructions and it is only where the repetition occurs so often that the jury is overly impressed with some aspect of the case that the giving of the instruction is erroneous. *Perry v. Goss*, (1970) 253 Ind. 603, 255 N.E.2d 923. The repetition in this case was not of such magnitude.

**7.** Weidenhamer's tendered Instruction No. 3, American Optical's tendered Instruction Nos. 1, 2 and 6, U.S. Safety's tendered Instruction Nos. 2, 3 and 12, all given or given as modified included the element of proximate cause.

Express warranties have been created by *inter alia*, a newspaper advertisement claiming a used refrigerator was in "good condition", *Eddington v. Dick*, (1976) 87 Misc.2d 793, 386 N.Y.S.2d 180; affirmations in an advertising brochure, *Hawkins Construction Co. v. Matthews Co.*, (1973) 190 Neb. 546, 209 N.W.2d 643; a statement is a sales catalogue that floor covering would absorb considerable flex, *Interco Inc. v. Randustrial Corp.*, (1976) Mo.App., 533 S.W.2d 257; and a label on a bag of cottonseed indicating the correct percentage of germination. *Walcott Steel, Inc. v. Carpenter*, (1969) 246 Ark. 95, 436 S.W.2d 820.

Based on the foregoing, the language on the boxes containing the glasses, "SURE–GUARD Safety Glasses, Your *Surest* Protection . . . AO SURE–GUARD Glasses, constituted written assurance of safe use. The giving of the instruction was not improper for the reasons asserted by American Optical.

*Refusal of American Optical's Instruction on Intervention of Third Party.*

■ The Court refused to give American Optical's Instruction No. 11 [8] which read: "The defendants are not responsible for the acts of any employees of International Harvester". American Optical claims the instruction was meant to refer to Cobble's act in removing the alleged warnings. Initially, we note the language of the instruction had much broader implications than that suggested by American Optical. It included the acts of *all* Harvester's employees, including Weidenhamer himself. In this regard, the instruction was obviously misleading and confusing and was properly rejected by the court. *Arnold v. Parry*, (1977) Ind.App., 363 N.E.2d 1055. The instruction was broad enough to allow the jury to relieve American Optical of liability for any act of Weidenhamer although such act did not legally contribute to the injuries. Even as applied to the actions of Cobble, it failed to include the fact that, if the jury found the warning inadequate, Cobble's removal of same would not have served to relieve American Optical of liability. *Spruill v. Boyle-Midway, Inc., supra.*

*The Giving, As Modified, Of American Optical's Instructions Nos. 3 and 6.*

At trial, American Optical tendered two instructions numbered 3 and 6 which were given after being modified by the trial court. Instruction No. 3 contained two paragraphs, the first defining misuse and the second stating that if the jury found misuse by Weidenhamer and it was the proximate cause of his injury American Optical would be exonerated. The trial court struck the second paragraph and gave only the first. This constituted a modification of the instruction.

■ Now, on appeal American Optical argues the modification rendered the instruction incomplete. Fatal to its argument is the fact that it failed to object to the instruction as modified, thus, in effect, accepting its accuracy. Where a party fails to object to its own tendered instruction which is given as modified by the court, any error in giving the modified instruction or in refusing the originally tendered instruction is waived. *Kosanovic v. Ivey*, (1968) 142 Ind.App. 481, 235 N.E.2d 501; Indiana Rules of Procedure, T.R. 51(C). *See Jackman v. Montgomery*, (1974) 162 Ind.App. 558, 320 N.E.2d 770; *Sims Motor Transport Lines, Inc. v. Davies*, (1955) 126 Ind.App. 344, 130 N.E.2d 82.

Similarly, Instruction No. 6 as modified was not objected to by American Optical. This instruction began "If you find that the injuries complained of proximately resulted from negligence or misuse of the lenses by his employer, the defendant, International Harvester Company . . . ". (Emphasis added). The trial court struck the underscored language. The failure to object to the modified instruction waived any error.

*American Optical's Tendered Instruction On Strict Liability.*

■ American Optical maintains the court erred in refusing its Tendered Instruction No. 7 which provided:

8. Permission was obtained to tender more than ten instructions. T.R. 51(D).

"The Plaintiff has charged the Defendants, American Optical Company and Warner Lambert Company with strict liability for manufacturing and selling lenses which were in a defective condition and unreasonably dangerous for use by him.

In order to recover against the Defendants on these charges, the Plaintiff has the burden of proof that the lenses he was wearing at the time of the accident were not safe for use in the manner contemplated at the time of sale and that his injuries proximately resulted from such defective condition and if he has failed to prove both of these allegations, then he cannot recover and your verdict should be in favor of the Defendants, American Optical Company and Warner Lambert Company."

In its brief, American Optical argues this instruction should have been given because it states that in order to recover the plaintiff must prove the glasses were defective and that such defect was the proximate cause of his injuries. If the subject matter of a tendered instruction is adequately covered by other instructions, it is not error to refuse to give it. *Thornton v. Pender*, (1978) Ind., 377 N.E.2d 613. U.S. Safety's Tendered Instruction No. 3 as modified and given was more complete and included not only the elements of a defect and proximate cause but also the other elements of proof which the trial court found necessary to establish a products liability claim. The instruction read as follows:

"In order to hold the defendants liable under the theory of strict liability, you must find all of the following to be present:

1. It manufactured the lens in question.

2. The lens was defective at the time of its delivery to International Harvester Company and was unreasonably dangerous to the user in the condition so sold to International Harvester Company.

3. There was no substantial change in the condition of the lens between the time of delivery to International Harvest-

er and the time of the accident in question.

4. The defect was the proximate cause of the accident in question."

"5. The plaintiff himself did not misuse the same and did not contribute to the accident in question through such misuse.

If the preponderance of the evidence has failed to prove all of these, then you should return a verdict for defendants on all allegations of strict liability."

We find American Optical Tendered Instruction No. 7 was adequately covered by U.S. Safety's Instruction No. 3.

*American Optical's Tendered Instruction on Misuse of Product.*

 American Optical next asserts its Tendered Instruction No. 9 was improperly refused. It read:

"I instruct you that misuse of a product such as optical lenses consists of a use or manner of use for which they were not designed and intended. It includes a use incurring dangers and hazards which are or should be obvious and apparent to a person of ordinary and reasonable prudence. Likewise it includes a use not contemplated for normal handling."

We acknowledge misuse to be a defense to a claim of strict liability. *Dias v. Daisy-Heddon*, (1970) Ind.App., 390 N.E.2d 222; *Gregory v. White Truck and Equipment Co., Inc.*, (1975) 163 Ind.App. 240, 323 N.E.2d 280; *Perfection Paint v. Konduris*, (1970) 147 Ind.App. 106, 108, 258 N.E.2d 681. But with respect to this particular instruction which purports to describe elements of such defense American Optical blandly states in its brief, "[t]he instruction, it is submitted, correctly states the law of misuse" without further argument, comment or authority. It has therefore waived this argument. *Peoples Bank & Trust Co. v. Stock*, (1979) Ind.App., 392 N.E.2d 505; *Smith v. State*, (1974) 160 Ind.App. 622, 312 N.E.2d 896; A.R. 8.3(A)(7). This Court presumes the trial court correctly decided questions presented and the appellant has the burden of overcoming this presumption by indicating how the trial court committed serious error. *Bauer v. Plumbers' Supply*

*Corp.*, (1965) 137 Ind.App. 106, 205 N.E.2d 567; *Farm and Home Insurance Co. v. Konradi*, (1964) 136 Ind.App. 356, 199 N.E.2d 726. In *N.Y. Central Ry. Co. v. Milhiser*, (1952) 231 Ind. 180, 189, 106 N.E.2d 453, 458, *reh. den.* 108 N.E.2d 57, our Supreme Court stated, "[A] court of appeals will not presume anything in favor of [the] appellant to sustain his alleged error." By failing in its brief to rebut the presumption that the trial court correctly decided to refuse this instruction,[9] American Optical has not demonstrated error.

■ American Optical does present argument in an attempt to show this instruction is supported by the evidence. However, the trial court has no duty to give an instruction which is an incorrect statement of the law even if supported by the evidence. *See, Ernst v. Sparacino*, (1978) Ind. App., 380 N.E.2d 1271, *Indianapolis Transit System, Inc. v. Williams*, (1971) 148 Ind. App. 649, 269 N.E.2d 543.

*American Optical's Instruction on Incurred Risk.*

The trial court refused American Optical's Tendered Instruction No. 10 which provided:

"One who knows of a risk or danger arising from the act or omission of another and understands the risk therefrom and voluntarily exposes himself to it, cannot recover for an injury which results from such exposure. Therefore, if you find that the lens was defective in any way, as I have defined the term "defective" in these instructions, and such defect proximately caused plaintiff's injuries, still, if you find from all the evidence that:

1. Plaintiff knew of any risk or danger resulting from any such defect, and

2. Plaintiff voluntarily exposed himself to such risk or danger, and

3. Plaintiff's injuries resulted from such risk or danger,

then you must find for the Defendants, American Optical Company and Warner Lambert Company and against the Plaintiff on all counts of Plaintiff's complaint."

■ American Optical asserts there was evidence to support this instruction and incurred risk is a defense to strict liability. We agree incurred risk is a defense to strict

9. We note that misuse has been defined by this Court as using a product "for a purpose not reasonably foreseeable to the manufacturer" or using the product "in a manner not reasonably foreseeable for a reasonably foreseeable purpose." *Perfection Paint and Color Co. v. Konduris*, (1970) 147 Ind.App. 106, 119, 258 N.E.2d 681, 689 (quoting *Cornette v. Searjeant Metal Products*, (1970) 147 Ind.App. 46, 258 N.E.2d 652, concurring opinion, J. Sharp concurred in by J. Pfaff.) Further, as stated in *Products Liability, supra*, at § 8.05[1] "Not only may misuse or failure to follow directions be foreseeable, but there may be liability for unintended abnormal use of a product if it is foreseeable." A number of jurisdictions support this view. *See e. g. Spruill v. Boyle-Midway, Inc., supra*, (applying Va. Law). *Thomas v. General Motors Corp.*, (1970) 13 Cal.App.3d 81, 91 Cal. Rptr. 301; *Early-Gary, Inc. v. Walters*, (1974) Miss., 294 So.2d 181; *Meyerson v. Niagara Machine & Tool Works*, (1973) 33 A.D.2d 1039, 308 N.Y.S.2d 807. Based on the foregoing the trial court could have reasonably concluded the instruction, by omitting foreseeability, was an incorrect statement of the law.

Further, since the purpose of an instruction is to inform the jury, it is not error to refuse an instruction which is confusing. *Arnold v. Parry*, (1977) Ind.App., 363 N.E.2d 1055. *See Brewer v. State*, (1969) 253 Ind. 154, 252 N.E.2d 429; *Deckard v. Adams*, (1965) 246 Ind. 123, 203 N.E.2d 303. Upon careful review, being ourselves unable to determine the exact meaning of the phrase "it includes a use not contemplated for normal handling", we believe the trial court also could have correctly refused this instruction as confusing.

Finally, if the subject matter of an instruction is adequately covered by other instructions given, the court is correct in refusing it. This instruction is essentially an attempt to define misuse and incurred risk and even conceivably contributory negligence. (Although in this jurisdiction contributory negligence is not a defense to strict liability in tort, *Perfection Paint & Color v. Konduris, supra*, it is a defense to negligence, *Koroniotis v. LaPorte Transit, Inc.*, (1979) Ind.App., 397 N.E.2d 656, one of the counts upon which this case was submitted to the jury.) The questioned instruction was more than substantially covered by Court's instructions Nos. 6 and 7, American Optical's instructions Nos. 2, 3 as modified, and 4 as modified, and U.S. Safety's instruction No. 3.

liability. However, because the subject matter of this instruction was adequately covered by American Optical's Tendered Instruction No. 4 given as modified and U.S. Safety's Tendered Instruction No. 2, the trial court did not commit error. *See Thornton v. Pender, supra.* American Optical's Tendered Instruction No. 4, as modified and given, read as follows:

"I instruct you that assumed or incurred risk is a defense to the application of the doctrine of strict liability. The term assumed or incurred risk means that one incurs all the ordinary and usual risks of an act upon which he voluntarily enters, so long as those risks are known and understood by him or could be readily discernible by a reasonable and prudent man under like or similar circumstances.

Therefore, even if you should find the doctrine of strict liability is applicable to the lenses being worn by Plaintiff on September 26, 1972, the Plaintiff is not entitled to recover of Defendants, if Plaintiff assumed or incurred the risk of using said lenses."

U.S. Safety's Tendered Instruction No. 2 provided:

"If you find from a fair preponderance of the evidence that the Plaintiff, Chris Weidenhamer, incurred the risk of the accident by wearing safety lenses which were scratched or pitted, which scratching or pitting approximately caused or contributed to cause the injuries to the plaintiff, then you should return a verdict for the defendants."

We reject American Optical's argument.

*Excessive Damages.*

American Optical finally contends the damages were excessive. By nature, personal injuries are not susceptible to a precise rule for measuring damages. Because the purpose of assessing damages is to endeavor to compensate the specific individual harmed by the negligence of another, the law does not undertake to impose a hard and fast rule to be used blindly in determining the damage award in every tort action. *Dubreuil v. Pinnick,* (1978) Ind.App., 383 N.E.2d 420; *Kavanagh v. Butorac,* (1966) 140 Ind.App. 139, 221 N.E.2d 824, *reh. den.* (1967) 221 N.E.2d 824.

In *Kavanagh v. Butorac, supra,* at 221 N.E.2d 828 this Court stated:

"For a formula then, our common law sets only general guidelines for compensating the victim, each in its own way to be considered by the trier of facts and weighed to determine what the total compensation will be. Because of the personal nature of each case and since the decision is unique to the particular set of facts our courts have said the trier of facts is to be given "sound discretion" and "liberal discretion" where damages cannot be defined and calculated with mathematical certainty or by an exact standard."

The tests to be used by this Court in determining whether to reverse an action on the grounds of excessive damages were distinctly articulated in *Allison v. Boles,* (1967) 141 Ind.App. 592, 597-98, 230 N.E.2d 784, 787 as follows:

"The general rule of law applicable which has been the one recognized for over a hundred years, is to be found in the case of *Coleman v. Southwick,* (1812) 9 Johns N.Y., 45, 6 Am.Dec. 253, 254, wherein Chancellor Kent stated:

"It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries * * * The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have not standards by which to ascertain the excess".

We have often declared we will not reverse unless the damage award is so

large it cannot be explained by any reasonable hypothesis except corruption, passion, prejudice, partiality or some other improper consideration *E. g. McCue v. Low*, (1979) Ind.App., 385 N.E.2d 1162; *Kroger Co. v. Beck*, (1978) Ind.App., 375 N.E.2d 640. Also, reversal is not justified if the amount of damages is within the scope of the evidence. *Chicago South Shore and South Bend Railroad v. Brown*, (1974) 162 Ind. App. 493, 320 N.E.2d 809, *reh. den.* (1975) 162 Ind.App. 493, 323 N.E.2d 681, (quoting *State v. Daley*, (1972) 153 Ind.App. 330, 287 N.E.2d 552). Further, in *Chicago South Shore & South Bend Railroad v. Brown, supra*, this Court upheld a damage award of $125,000 which was ten times the total amount of medical expenses and lost wages ($12,623) against a challenge it was based upon passion, prejudice and improper consideration, concluding the damages were not outrageous in light of the medical expenses, lost wages, continued disability and constant and periodically severe pain suffered by the plaintiff. In *Duchane v. Johnson*, (1980) Ind.App., 400 N.E.2d 193, this Court affirmed a damage award of $30,000 although the total medical expenses were only $2,700 and at the time of the trial Johnson was "well on the way to recovery," stating that testimony of pain, depression, temporary suspension of certain of Johnson's activities and delay in career goals plus the fact that the operation left a scar on his hip sufficiently supported the damage award as not being excessive despite the fact that had this Court been the jury it might well have awarded a different amount. Finally, any doubt as to the amount of damages is to be resolved against the wrongdoer. *Kroger v. Beck, supra.*

■ On appeal American Optical asserts the damage award must have been based upon passion, prejudice and undue influence. Therefore it alleges the damages were excessive. In support of this proposition it makes two arguments.

■ First it claims there can be no reasonable basis for sustaining the damage award of $57,724.45 when Weidenhamer had medical and hospital expenses and lost wages totalling only $7,724.51. At the onset we note a damage award of approximately eight times actual expenses, if supported by the evidence, is not inherently excessive. *See Chicago South Shore & South Bend Railroad v. Brown, supra.* We now consider the evidence.

Weidenhamer was twenty-four years old at the time of the accident. At that time, as stipulated by the parties, he had a life expectancy of 46.58 years. Prior to the accident his visual acuity was better than 20-20 and he had never worn corrective glasses of any type. When the safety lens shattered, the center of his right eyelid was lacerated from below the eyebrow to above the eyelash. There was glass in the laceration and also in his right eyeball. The injuries were medically described as "a laceration of the right upper lid through and through, and a laceration of the cornea and iris with a prolapse of the iris." When the injury occurred Weidenhamer experienced pain and lost the vision in his right eye. He was taken to the dispensary, still having no vision in his eye, where he could feel the pain when the nurse removed the glass as he was held on the table. From the dispensary he was taken to a private doctor's office for examination and then to the emergency room of Parkview Memorial Hospital where he was re-examined and taken immediately to surgery. After the surgery which resulted in stitches in his eyeball and eyelid, Weidenhamer remained in the hospital three or four days; he was unable to see until just prior to his being released when he saw a faint light. He continued to wear a patch during the first six weeks he stayed with his mother. He could not lie on his right side or on his stomach and had to stay in a darkened room for the entire six weeks. His mother put ointment in his eye every four to six hours around the clock. Each time his eye was so treated to he experienced pain. He also had pain even when his eyes were not being treated.

Weidenhamer was unable to work until May 9, 1973, approximately seven and one

half months after the injury. During that time he wore an eyepatch which was eventually replaced with glasses. His vision was blurred, he saw double images, and he was extremely sensitive to light. In fact, he testified the sensation was "just like somebody hitting you in the head with a hammer." Sunglasses only partially alleviated this pain. After he returned to work and over a year after the accident, the injury healed sufficiently so the doctor could fit him with a hard contact lens which corrected his visual acuity from 20-70 (a 25% impairment) to 20-20, and lessened the amount of light reaching his eye. He is unable to wear a soft contact lens because two of his four tear ducts are inactive as a result of the accident and also unable to wear a darker tint contact lens which would camouflage his injury.

The condition of the eye has stabilized but as a result of the accident part of the iris of his right eye is missing and the rest of the iris protrudes. The eye gives the appearance of having two pupils and the natural pupil no longer functions properly. Consequently, Weidenhamer still suffers painful lasting headaches and will continue to experience this discomfort for the rest of his life whenever he goes from darkness to light. At night he cannot glance at headlights from oncoming traffic and is forced to close his right eye. Because of this he fears he could lose his license. Moreover his vision is still blurry even with the contact lenses and his depth perception has been affected. The damage to the eyeball along with the scar on the eyelid is visible to others. Because of the necessity of his wearing the contact lens, debris is likely to accumulate between the contact lens and the cornea and cause abrasions of the cornea. If abrasions are present subsequent infections or alterations of the cornea are possible. Since the light bothers him and he is photophobic with the eye, he will squint one eye, possibly developing a drooping eyelid. Although a normal eye will completely adjust once it has been in the light for a period of time, Weidenhamer's eye will adjust only in very limited amounts. Because the injury was so close to the lens of the eye, there is also a possibility of a traumatic cataract developing which would eventually need surgery. We also note the jury heard extensive medical testimony about the operative techniques involved in repairing his severely cut eyeball and about the treatment and the abnormal state of his eye for the period of over a year he was undergoing treatment.

In summary, Weidenhamer, a young man who before the accident possessed normal vision, sustained extremely painful and permanent injuries. Having examined the damage award in the light of the foregoing evidence and considering the fact that American Optical did not introduce any evidence of what proper damages might be, we conclude that $57,724.41 was not an unreasonable award and certainly not so outrageous as to indicate the jury was motivated by passion, prejudice, partiality or consideration of improper elements.

■ For its second argument on excessive damages, American Optical hypothesizes the jury was probably influenced and angered by the directed verdict in favor of Harvester. The jury was instructed to determine the facts from the evidence and not to consider any exhibits or testimony not admitted into evidence. There is a presumption that the jury considered only matters shown by the evidence and applied the law given them by the instructions. *State v. Brubeck*, (1930) 204 Ind. 1, 170 N.E. 81; *Shane v. Fields*, (1963) 135 Ind.App. 353, 190 N.E.2d 195. *Hahn v. Moore*, (1956) 127 Ind.App. 149, 133 N.E.2d 900, *reh. den.* (1956) 127 Ind.App. 149, 134 N.E.2d 705. American Optical has failed to rebut that presumption. Further, there is nothing in the record disclosing the jury considered anything but the evidence. American Optical's allegation is pure speculation, not really worthy of consideration.

The judgment is reversed in part and affirmed in part. The trial court is instructed to enter judgment in favor of U.S. Safety. The judgment against American Optical is affirmed.

YOUNG and CHIPMAN, JJ., concur.